## DYER v. THE EXECUTORS OF JESSUP.

1. FRAUD. In equity a settlement of accounts and the execution of a receipt will not be considered as conclusive upon the parties thereto when procured by fraudulent representations.
2. PRACTICE IN THE SUPREME COURT. The court instead of remanding a cause to the District Court for the correction of an error in computation, may render the judgment that should have been rendered below.

*Appeal from Dubuque District Court.*

SATURDAY, OCTOBER 6.

THE facts are fully stated in the opinion of the court.

*Platt Smith*, one of the defendants, discussed the evidence, and *J. S. Covil*, also for the appellants, filed a written argument, the principal portion of which was also devoted to an examination and discussion of the evidence. He presented the following points and authorities.

I. Except in very peculiar circumstances, courts of equity will not compel the specific performance of a contract in regard to personalty. Whenever damages are commensurate with the injuries sustained, as in contracts to pay stock, &c., they refuse to interfere, 2 Story Eq. Jur. section 716 and note 1, 717, 718; 1 Sug. on Ven. 272; *Harnett* v. *Yielding* 2 Sch. & Lefr. 552; *Maulden* v. *Armstead*, 18 Ala. 510.

II. In this case no peculiar circumstances are alledged, nothing to distinguish it from that of any contract for the delivery of personalty, no reason assigned why the value of the bonds and stocks is not full and adequate compensation. To obtain damages is apparently the sole object of the bill. There is consequently no equity in the bill.

III. The only ground of equitable interference set up in the bill is that of actual fraud. The prayer is based on neither an accident, a mistake nor a trust. The fraud alleged is that Jessup misrepresented the amount which he received from a sale of the lands. If the evidence fails to make out a case of actual fraud it must be dismissed; and the plaintiff will not be entitled to a decree by establishing some of the facts which might of themselves create a case under a totally distinct head of equity; *Ayer* v. *Potter*, 16 How. (U. S.) 56; *Mount Vernon Bank* v. *Stone* 2 R. I. 132; *Tillinghast* v. *Champlin*, 4 R. I. 200, 201; *Anson* v. *Bellworthy*, 22 Eng. L. & E. 7–11; *Fisher* v. *Boody*, 1 Curtis C. C. 211.

IV. A party asking relief on the ground that he has been deceived must not himself be in fault. If at the time he was in possession of the means of informing himself he is bound to use them. Courts will not protect a party against his own folly, *Tindall* v. *Harkinson*, 19 Georgia 448; *Murrill* v.

*Murrill*, 2 Strobh. Eq. 153. None of the circumstances that usually attend a fraudulent transaction were present in this case. 1 Story Eq. Jur. section 199; *Wasson* v. *Wailing* 15 Eng. L. & E. 121.

*Cooley, Blatchley & Adams* for the appellees, discussed in an elaborate manner the facts developed by the pleadings and evidence in this case. They contended that where an agent makes a sale of his principal's property, and in the sale embraces property of his own, and as an inducement to the purchase promises the vendee his good will and assistance in negotiating another trade, the principal is entitled to the entire proceeds of the sale in which his property is embraced unless the agent shows by clear and satisfactory testimony the proportionate value of that part of the consideration furnished by himself, and of that part furnished by his principal; citing 2 Bl. Com. 405; *Holbrook* v. *Hyde*, 1 Verm. 286; *Wren* v. *Kirton*, 11 Ves. 36 9, 382; *Ketcher* v. *Walker*, 3 Madd. 72; *Chedworth* v. *Edwards*, 8 Ves. 49, 50; Story on Agency, section 205; Paley on Agency (by Lloyd) 48, 51; 1 Story Eq. Jur. sections 468, 623; Story on Bail. 40.

Lowe, C. J.—*In Chancery.* The plaintiff states in his bill that he and M. K. Jessup, now deceased, in August 1855, owned jointly a certain quantity of town lots and lands in Iowa. That Jessup expressed a wish as well as an intention to dispose of his interest in said lands to R. B. Mason & Co., and desired that plaintiff should also sell a part or all of his interest likewise; that the plaintiff consented that Jessup might sell one half of his interest on the same terms he sold his own. That soon thereafter said Jessup did sell to R. B. Mason & Co. the undivided three-fourths of said lands, being his own half, and the half of plaintiff's moiety. This being done, he represented to plaintiff that he had sold the three-fourths of the land for $30,000 in Rail Road Bonds, and upon that basis settled with him. The bill charges that afterwards the plaintiff ascertained that Jessup had received for

said land from R. B. Mason & Co. some $33,000 of first mortgage bonds of the Dubuque & Pacific Rail Road Company, and fifteen hundred shares of the Iowa Land Company's stock, which fact Jessup fraudulently concealed from him, and refused to account to him for the full one-third of the proceeds of the sale of said land, and he now asks that his executors may be required to do so.

The answer, besides denying the material allegations of the bill, sets up some special matters of defense :

1st. That Dyer in consenting that Jessup should sell his, the plaintiff's, interest with his own, named a specific sum, to wit: ten thousand dollars as the price for which he was willing to part with the half of his interest, and that amount thus agreed upon he, Jessup, had accounted to Dyer for.

2d. That additional considerations besides the price and value of the joint property of Dyer and Jessup, entered into the sale to R. B. Mason & Co., to wit: land belonging to Jessup alone, and services and assistance in the negotiation of rail road bonds, for Mason & Co. who were railroad contractors.

3d. A final settlement of the matters in the life time of Jessup, &c.

In this controversy no questions of law are raised. It is one purely of evidence, which comes to us in the form of depositions and exhibits, which we can not consent to take up and discuss in detail, but will select certain propositions of fact, which we think a preponderance of testimony establishes:

1st. That the parties were joint and equal owners of the property described in the petition. That Jessup did undertake to sell one half of plaintiff's interest thereto without charge or commission, to R. B. Mason & Co., and to account to plaintiff therefor at the same price or rate that he, Jessup, should get for his own interest.

2d. That Jessup did negotiate a sale of said land to R. B. Mason & Co. and received therefor $33,000 first mort-

gage bonds of the Dubuque and Pacific Rail Road Co., and fifteen hundred shares of the stock of the Iowa Land Company, but of this amount one thousand dollars was for 240 acres of land belonging to Jessup alone.

3d. That the market value of these rail road bonds, was 80 cents on the dollar, and of the stock of the Iowa Land Company was $30 per share.

4th. That the special defenses set up in the answer are not sustained by the evidence except so far as the sale of 240 acres of land is concerned, which belonged to Jessup alone, valued at $1000.

5th. That the receipt given by plaintiff to Jessup, &c., on the 13th day of December, 1855, for $10,000 in full for his share of the proceeds of the sale of lands aforesaid, should not as a settlement conclude the plaintiff from setting up a claim for the balance really due him, for the reason that the testimony shows that he executed that receipt ignorant of the fraud that was being practised upon him, and while Jessup was protesting that he had received only $30,-000 in bonds for the land. It is true that the proof shows that the plaintiff one or two months before the date of this receipt had heard indirectly from Mason, that $56,000 in bonds had been paid for the lands, and that he had informed Jessup of this rumor which he denied. But even if he had not denied it, still in our opinion the plaintiff should not be bound by this information, because even that was untrue. To be sure there was a written contract between Mason & Co. and Jessup, by which the former was to give the latter $45,000 in second, and $10,000 in first mortgage bonds of the Dubuque & Pacific Railroad Co., but before the bonds were delivered, as Mason testified, the terms of the contract were changed, so that Jessup was to receive $33,000 in bonds of the Railroad Company, and fifteen hundred shares in the stock of the Iowa Land Company, which the evidence shows would be fifteen or eighteen thousand dollars more than under the first contract; and there is not a particle of

evidence to show that the plaintiff had any intimation of this fact, till long after the receipt aforesaid was executed.

Again, while the testimony does show that it was expected by the parties, as a sequence of this trade, that Jessup would assist Mason & Co. in the negotiation of their railroad bonds, and that Jessup's influence in that direction, and acquaintanceship with capitalists did constitute an important inducement in the minds of Mason & Co. to make the purchase; yet it also shows that this was only a moral obligation, that he was not legally bound to do so; that it was not one of the conditions of the contract; that there was no fixed pecuniary value placed upon his services in that regard as distinct from the price and value that was to be given for the land; nor do the witnesses or even the defendants, in their answer, venture to state the pecuniary value of these services, so that the court below or this court could have any *data* by which to separate the value of these services from the price and consideration given for the land.

6th. The proofs show that the sale of these lands was not for money, but for bonds and stocks; that the value of the Railroad bonds being 80 cents on the dollar, the $33,000 of that class of securities would amount to          $26,400.

The value of 1500 shares of stock in Iowa Land
          Company at $30 per share would be          $45,000
                                                     ————————
          Making in the aggregate,                   $71,400
This includes, however, $1000, the proceeds of
          Jessup's own lands, to be deducted,          1,000
                                                     ————————
                                                     $70,400

Of this amount the plaintiff is entitled to recover one-third, being $23,466,66, and the evidence shows that he has been paid $7,000 in bonds and $3,000 cash, which is equal to $3,600 in bonds at 80 cents. Deducting the $10,600, we have left, $12,866,66, which is something less than was found for the plaintiff below, making it necessary for us to change

the judgment and to enter now such a decree as should have been entered in the court below.

Computing the interest on this sum from the first of December, 1856, to the 1st of December, 1860, when this decree will be entered, we have $15,954,65, for which sum the clerk is directed to enter up a judgment in behalf of the plaintiff for the use of the assignee, D. N. Cooley, and to tax the cost of this court to the appellee, &c.

Affirmed.