26 363
106 56
26 363
115 314

HUNT v. THE CHICAGO & N. W. R. R. Co.

1. **Instructions:** ERROR WITHOUT PREJUDICE. The giving of an instruction which, though technically erroneous, it is apparent could have worked no prejudice to the party complaining, will not operate to reverse the case.

2. Railroad: INJURIES TO EMPLOYEES: MASTER AND SERVANT. A railroad company and an employee occupy the relation of master and servant, and, independent of the statute, the company would not be liable for an injury sustained by one employee through the negligence of another.

3. —— LIABILITY UNDER THE STATUTE. While section 7, chapter 169, laws of 1862, gives to an employee the right to recover of a railroad company for injuries occasioned by the negligence of a co-employee, the liability of the company is nevertheless measured by a different standard and rule as to negligence from what it is in the case of injuries to passengers.

4. —— While extraordinary care and caution are due from the company to passengers, ordinary care only is due to the employee. WRIGHT, J., dissenting in the two last points, and holding, that, under the statute, the same rule is applicable to both.

5. Damages: RAILROAD: EVIDENCE OF PLAINTIFF'S CONDITION. In an action against a railroad company by an employee for injuries resulting from the alleged negligence of the company or a co-employee, the plaintiff was allowed to prove that he had no means to subsist upon, and that he was entirely dependent upon his labor for support. This evidence is admissible as tending to show the nature of his business and the value of his services.

6. —— ABILITY OF DEFENDANT TO PAY. The jury, however, cannot take into consideration the ability of the defendant to pay, for the purpose of increasing the damages, in the absence of bad motive or any fact to entitle the plaintiff to exemplary damages.

7. —— Whether this could be done in a case where plaintiff was entitled to exemplary damages, quere?

*Appeal from Clinton District Court.*

FRIDAY, JANUARY 29.

ON the 4th of March, 1867, plaintiff was in defendant s employ as a brakeman. He was on the train (freight) going east in discharge of his duties, and upon descending from one of the cars, while the train was switching and in motion, was struck by the bars of a cattle chute, which had been left projecting, knocked from the car, and thrown under the train, which passed over and crushed both his

arms. One of them was afterward amputated, and the other rendered useless. He seeks in this action to recover $15,000 damages for these injuries, occasioned, as he alleges, by the gross negligence of defendant and its employees. Trial, verdict and judgment for $12,000. The jury also return specially: first, that the bars of the chute were not in such a condition that plaintiff could have seen them when about to descend from the car; second, that they were projecting beyond the end of the chute; third, that plaintiff was so situated that it required extraordinary care and watchfulness to see the condition of the bars; fourth, his injury was not contributed to by his own negligence or want of care. Defendant appeals.

*E. S. Bailey* and *L. A. Ellis* for the appellant.

*W. E. Leffingwell* and *A. R. Cotton* for the appellee.

WRIGHT, J. — I. It is claimed that this language, to wit, "if the injury was caused by the carelessness or negli-

1. INSTRUC-TIONS: error without preju-dice.

gence of the defendant, then plaintiff is entitled to your verdict," found in the third instruction, is erroneous, for that it ignores entirely the question of the contributing carelessness of the plaintiff, or the want of proper care and watchfulness on his part to avoid the injury.

It is conceded that it was plaintiff's duty to satisfy the jury that the injury was occasioned without fault on his part, and through the neglect or want of proper or requisite care and prudence on the part of defendant. And it may be admitted that the part of the instruction above quoted, standing alone, would be erroneous. It would certainly tend to mislead the jury. Upon two grounds, however, it is stripped of any prejudicial error in the present case. The first is, that the court in the charge

expressly said that before plaintiff could recover, the jury must find that the injury was received without fault or negligence on his part; that he was required to exercise ordinary care to avoid injury from the acts of other employees of the road, and that he could not recover if his own negligence was in whole or in part the approximate cause of the injury. The second is, that the question was specifically asked the jury whether plaintiff's negligence or want of care contributed to the injury, and such negligence is completely negatived by the answer. The cases of *DeMoss* v. *Haycock*, 15 Iowa, 149; *Baker* v. *The Steamboat Milwaukie*, 14 id. 225; *Bondurant* v. *Crawford*, 22 id. 40; *Hamilton* v. *The State Bank*, id. 306; *Shafer* v. *Grimes*, 23 id. 550 (not to refer to numerous others upon the same subject) teach unmistakably that appellant under these circumstances is in no condition to object to this instruction, and that all possible error contained therein, is so completely removed, or chance for prejudice so entirely rebutted, that we could not reasonably nor consistently upon this ground reverse the judgment.

II. The next point made arises upon a portion of the fifth instruction, as follows: "Plaintiff, in the performance of his duty, is required to exercise ordinary care to avoid injury from the acts of the other employees of the road; while the defendant, in operating its trains upon its road, is required to exercise that care and caution which very attentive and vigilant persons exercise in their own affairs. In other words, while the plaintiff must discharge his duties in the exercise of ordinary care, the defendant must use all the care and caution which, under the circumstances, are practicable, and is responsible for all accidents and injuries happening to passengers or persons employed on its road which might have been prevented by the exercise

*2. RAILROAD: injuries to employees: master and servant.*

of extraordinary care on its part." And, as further show-
ing the view of the law touching the question under con-
sideration, the court also instructed that, " our law pro-
vides that every railroad company shall be liable for all
damages sustained by any person, including employees of
the company, in consequence of any neglect of the agents,
or any mismanagement of the engineers or other em-
ployees of the corporation, to any person sustaining such
damages. So that if, in this cause, the plaintiff has sus-
tained any damage in consequence of any neglect of any
agent, or by mismanagement of the engineers, or any
other person in the employ of the company, then the com-
pany is liable for such damages, unless you find from the
evidence that plaintiff's own negligence was in whole or
in part the proximate cause of the injury."

Appellant insists that the rule or rules thus laid down,
though correct as to the duty of the company toward
passengers, is erroneous as to the relative rights and
duties of the company and its employees; that the true
rule is, that *extraordinary* care and caution are due from
the company to passengers, while ordinary care only is
due to the employee. Plaintiff, as we understand it, not
controverting these positions looking to the common law
and in a proper case, maintains that the statute (ch. 169,
§ 7, Laws of 1862) introduces a new rule on this subject,
and if not, then that the act of defendant's employees in
permitting the bars of the cattle chute to project was
gross negligence, and defendant could not, therefore, be
prejudiced by the instruction of which counsel now com-
plain. We unite in holding that the second part of ap-
pellee's response to appellant's position is untenable. To
sustain it, we should have to find that the jury was
clearly justified in finding for plaintiff upon the ground
of gross negligence on the part of defendant's employees.
Or, to state the proposition still stronger, we should be

satisfied that the testimony was so clear and conclusive as to such negligence that the jury could not have found against it. And this view is peculiarly just and pertinent in this case, from the fact that the instructions nowhere put the liability upon the ground of gross negligence. Nor is there any thing in the testimony from which it can be said that the jury were bound to reach this conclusion. As a matter of law, the single fact that the bars were left projecting, would not amount to such negligence as to create liability if the rule between the company and the plaintiff remains as at common law. So many facts or elements enter into the inquiry as thus stated, — for instance, how far the bars projected, how many of them, who left them in that position, how long they had so remained, what care and diligence the plaintiff used in descending from the car at that time and place, the necessity for so doing in the discharge of his duties, — we say these and other inquiries, enter so legitimately into the question, that it cannot be said as a matter of law that the fact that the bars were so left would amount to gross negligence. And what has already been said, sufficiently indicates that the testimony did not preponderate, certainly was not overwhelmingly, in favor of such conclusion. So that we are left to look at plaintiff's first position, or the argument derived from the statute of 1862, which is, indeed, the great question of the case, one of very considerable practical importance, and one which is thus far a new one in this State.

The act under consideration declares that "every railroad company shall be liable for all damages sustained by any person, including employees of the company, in consequence of any neglect of the agents, or by any mismanagement of the engineers or other employees of the corporation, to any person sustaining such damage."

Appellant's argument upon the statute is, briefly, as

follows: Without the statute there is no authority for
holding the company responsible for the safety of the
employee to the same extent that it is for that of the
passenger; for the safety of the latter, so far as practica-
ble, the common carrier is, by law and public policy,
regarded as having guaranteed.   And that the care which
the law exacts toward the employee, is that which is
regarded by the good common sense of mankind, as
reasonably due under all the circumstances of the case.
Or to express the argument in still other words, it is
insisted that the defendant is responsible for injuries to
its agents arising from the want of ordinary care and
precaution, and that the liability is not as broad in such
a case as in that of passengers.   And having advanced
thus far, it is then said, that, at the common law, the
employer was liable to the employee for an injury sus-
tained by him from the personal negligence of the
employer; that notwithstanding the refinements indulged
in by the courts in determining when an act was that of
the master or employer, and when not, yet, that, when-
ever the injury was attributable to his personal careless-
ness, he was answerable for the damages; that the statute
treats the neglect of the co-employee as that of the em-
ployer, and hence fixes the liability; and that the only
change effected is to make the master liable for the acts
of the agent or servant in that class of cases, and under
such circumstances only as he would have been responsi-
ble for before the statute, by reason of his own personal
neglect.   This conclusion reached, the remaining part
of the argument is easy enough; and hence it is said
these companies are subject to the general law governing
master and servant; that the general rule is, that the
master is only held to the use of reasonable care and
diligence to prevent accident or injury to the servant in
the course of his employment, and, therefore, as this

statute substitutes the servant for the master and makes his carelessness that of the employer, the master is only liable when the servant fails to exercise reasonable or ordinary diligence.

I have thus undertaken to give, as briefly as possible, the argument upon which this view of the statute is 3. —— liability attempted to be sustained. And I am in- under the statute. structed to say, that, without being committed to all the reasoning, the majority of the court concur in the conclusion reached, that the court below erred in giving the fifth instruction and in the construction given to the statute. Their opinion is, to state it in somewhat different language, that, without the statute, "when different persons are employed by the same principal in a common enterprise, no action can be brought by them against their common employer, on account of injuries sustained by one employee through the negligence of another (*Sullivan* v. *The M. & M. R. R. Co.*, 11 Iowa, 421); that the statute only intended to give to the employee a right of action in such cases, but that it was not intended to hold the principal to extraordinary diligence and care on the part of the co-employees; that the purpose of the statute was to declare a right, and not to fix or change the rules which should govern in the settlement or ascertainment of that right. Or, still again, that the legislation was after the decision above cited, denying the right of the employee to recover for the carelessness of a co-employee; that it *confers no rights* upon any one other than employees, for all others had the right without the statute; that the relation between plaintiff and defendant is that of master and servant, and so of all others in a like relation, and the statute would and should naturally and reasonably be construed so as to measure the right by rules applicable in such relations; that the company and passengers occupy very different relations, and their

rights and liabilities must be measured by very different rules than those in the case of company and employees, for the passenger recovers, not by virtue of the statute, but because this is his right without its aid; and hence it is, that, as the one relies alone upon the statute, and the other upon the obligations imposed upon common carriers at common law, different rules of diligence must be, and were intended to be, applicable.

In this conclusion I do not concur, and hence believe there was no error in the instructions now under consideration. My opinion is, that the act of 1862 (§ 7, ch. 169), passed as above shown, immediately after the decision in 11 Iowa, *supra*, was intended to place the employee precisely upon the same ground as the passenger. And my reasoning is this: First, the statute says the company shall be liable for *all* damages sustained by *any* person in consequence of any neglect of the agents or by any mismanagement; and then as if to show the very purpose of the enactment it says, "*including employees of the company.*" Now, if slight negligence, or if the failure to exercise extraordinary diligence will amount to such slight negligence, and if such slight negligence is *any* negligence, then it is the negligence of the statute. If it is not, then there is no liability. But, I know of no warrant for saying that *any* means *gross* and *ordinary* and does not include *slight* negligence. Second, the company is liable for all damages sustained by *any person*, etc. What is the rule of diligence required as to passengers? Of course, extraordinary; or, there is liability where there is slight neglect. But, is the passenger "*any person*" any more than the employee? And why are we justified in saying that the rule of diligence is different for the passenger (who is "any person") from what it is for the employee (who is also "any person")? If an employee is not *any* person, and if *slight* is not *any*

negligence, then the conclusion of the majority is right. But, as I conclude that an employee is a person, and that *any* includes *slight* negligence, I cannot concur. Not only so, but the construction given to the statute introduces an exception, without necessity, and this the court should avoid if possible. It is better, in my judgment, that rules should be uniform, and that exceptions should not be introduced unless reasonably and fairly required for the furtherance of justice or the protection of rights. Nothing contributes more to the deplored uncertainties of the law than these constant exceptions engrafted by the courts upon statutes, because it is imagined or believed that the legislature never intended to embrace this or that extraordinary innovation upon the rule of the common law. The better and safer rule is to accept the law in its declared words, and leave its hardships or the supposed inequalities of its operation for legislative correction.

But I will not further state the grounds of my dissent. It follows, from what has been said, that, for the error in the fifth instruction, the judgment below must be reversed.

But before directing this order, some other matters demand our attention. The plaintiff was allowed, against 5. DAMAGES: defendant's objection, to prove "that, he had railroad: evidence of no means or property to subsist upon, and plaintiff's condition. that he was entirely dependent upon his labor for his support;" and the court instructed that it was proper, in estimating damages, if the jury found for plaintiff to take into consideration "the ability of defendant to pay such damages as will in some manner compensate him for the loss he has sustained." Of the introduction of this testimony and the giving of this instruction, defendant now complains. And whether in this action there was error and whether the verdict was excessive, are the only other matters pressed upon our consideration.

The testimony offered and received was competent. Plaintiff could prove legitimately, the nature of his business and the value of his services in conducting it, as a ground of estimating damages. The pain and suffering might be as great to the man with means as to the poorest of the land. But we know, as a fact, that the loss of an arm might entirely incapacitate the mechanic for labor, while the clerk, though greatly inconvenienced, could still use the pen and obtain employment in his profession or vocation. And this, and no more, as we understand it, is what plaintiff relied upon or the court had in view in admitting the testimony. 2 Redf. 222; Sedg. Meas. Dam. 591, marg.; *Lincoln* v. *Sar. & Sch. Co.*, 23 Wend. 425.

We cannot concur, however, in the ruling of the court, that the jury could take into consideration the ability of 6. ⸺ ability the defendant to pay, etc. The company of defendant to pay. paid all plaintiff's expenses, incurred in consequence of his injuries, including board, nursing and physician's bills, and his salary was also paid him up to the time of the commencment of this action. He was, also, offered any position he could fill, in and about the business of the company, such as watchman, or the like. There is no testimony tending in the least to show that the tort or injury was malicious; nor can we see any element tending to show that plaintiff was entitled to recover vindictive damages. And while some of the cases have held, that the pecuniary condition of a defendant may be shown, when plaintiff is entitled to vindictive damages, or in case of malicious torts, yet it is believed that the weight of authority is the other way. But whether so or not, we are not aware of any case which has gone so far as to hold, that defendant's ability to pay should be taken to increase the damages in the absence

of bad motive, or any fact to entitle the plaintiff to exemplary damages. See 1 Hill. Torts, 405, notes 3, 4; *Niffin* v. *McConnell*, 30 N. Y. 285; Sedwick Dam. 640, note 1.   Aside from the exceptional cases of slander and breach of promise to marry, courts should hesitate long before receiving such evidence, or allowing the jury to take into consideration the defendant's pecuniary ability, even under circumstances of aggravation, insult or cruelty, or of vindictiveness and malice.   But it is certainly not admissible in the absence of such circumstances.   If the plaintiff can show defendant's wealth, then the latter can show his poverty, and damages will be recovered, not according to the extent of the injury sustained, but the means of defendant and his ability to pay.   And hence it might occur that plaintiff would be fortunate, or the reverse, depending upon the condition of the defendant's purse at the time of the trial.   To-day he may be worth thousands, to-morrow nothing.   Such cannot be the rule. As to the claim, that the verdict was excessive, it is perhaps better that we should say nothing; and this because the case must be remanded for a new trial.   And yet we cannot resist the expression of an opinion, that the recovery is beyond what plaintiff could fairly or reasonably demand.   We are not aware that so large an amount has been recovered in any case of this kind in the State, though there has been many where death occurred from the wrongful act. · We know that within reasonable limits the damages rest within the discretion of the jury. The verdict should not be inadequate, for this might appear like the denial of justice; nor should it be extravagant.   It is not the duty of the jury to avenge the plaintiff's wrongs, but watching and looking to his interests, considering them as they affect him now and hereafter, they should also look at the defendant's conduct or that

. of its agents, and see what, if any apology is to be found therein. More than this we need not say. See 2 Redf. on Ry's, 223, note 11.

Reversed.