PHŒBE CONNOR, Defendant in Error, *vs.* CHICAGO, ROCK IS-
LAND & PACIFIC R. R. Co., Plaintiff in Error.

PER NAPTON, J.—VORIES, WAGNER AND SHERWOOD, JJ., NOT CONCURRING.

1. *Railroads—Damage act—Negligence of co-employees—Liability of company
for, in case of death.*—Under a proper construction of § 2 of the damage act,
(Wagn. Stat., 519–20) the representatives of an employee who is killed by a
railroad accident, cannot recover against the company, where the accident
was caused by the negligence of a co-employee, unless such co-employee was
not possessed of ordinary skill and capacity, and his employment or retention
after notice of his incompetency, is attributable to the want of ordinary care
on the part of the Road.

2. *Railroads—Damage act—Intention of, in case of death of person injured.*—The
design of § 2 of the damage act was simply to extend the liability for damages,
theretofore attached in favor of the party injured, to his representatives where
death ensues, and not to create any new liability in that event.   The words
"person" and "passenger," in the first and second clauses of that section, were
used indiscriminately and at random.  (Schultz v.  Pac.  R.  R., 36 Mo., 13,
criticised.)

3. *Constr. Stat.—Meaning of act must be carried out.*—Courts should carry out
the intent of an act, although to effect this a literal interpretation must be re-
jected.

PER CURIAM.

4. *Railroads—Damages, where deceased was at time of death a conductor.*—A
railroad company will be liable for killing an employee, notwithstanding the
fact that deceased was conducting and managing the train at the time of his
death, where the company was guilty of negligence in employing an unskill-
ful engineer, or in allowing such engineer to turn over the engine to a fireman
who was not qualified to manage it, and the damage resulted from the conduct
of the engineer or fireman.

5. *Railroads—Killing of employee—Negligence of co-employees—Liability of
road—Care of, in hiring co-employees, etc.*—The majority of the court adhered
to the doctrine of Schultz vs. Pac. R. R., (36 Mo., 13) that under § 2 of the
damage act, the representatives of an employee killed by a railroad train can
recover against the road, where the death was caused by the negligence of
fellow servants, without regard to the question whether the company exercised
proper care and prudence in selecting and retaining such fellow servants.
The word "person," in clause I of that section, includes employees.

PER HOUGH, J.—VORIES, WAGNER AND SHERWOOD, JJ., NOT CONCURRING.

6. *Damage act—Common law liability of company to employees not changed by—
Meaning of word "person" in damage act—Design of §§ 2, 3, of act*—The second
section of the damage act, was not intended to change the common law rule, that
the master is not liable for the death of a servant caused by the negligence of
a fellow servant, when the master himself has been guilty of no negligence, or
want of care, in the selection, or retention in his service, of the servant caus-

ing such death. The same common law defenses may be made by the master, in a suit brought against him under said section, by the representative of any servant dying from injuries received as therein specified, which might have been made by such master, in a suit brought by the injured servant himself, if death had not ensued. The words " any person" in the first clause of second section include employees, but not such employees, as are fellow servants of those causing the death. (§ 38 of the railroad corporation law, Wagn. Stat. 310 and Rohback v. P. R. R., 43 Mo., 187 ; referred to.)

The third section of the damage act applies to employees of carriers as well as to other persons.

*M. A. Low,* for Appellant.

I. Taking section 2 of the damage act as a whole, it is plain that it was designed, not to give a right of action, where none existed before, but to fix and limit the damages recoverable by the representative of a *passenger* from a common carrier, for injuries resulting in death, received either through the carrier or his servants. And the liability of such carrier is rather restricted than enlarged ; for the section provides that it shall be a sufficient defense to show that the defect or insufficiency was not a negligent defect or insufficiency.

II. Conceding that the word " person " in § 2, was not confined to " passengers," still the legislature evidently did not intend to apply the law to the mutual relations of master and servant. If so, then the strange proposition follows that while the care of the master in selecting the negligent co-employee will shield him from liability, for the worst form of injuries not resulting in death, in the latter event he will be bound, notwithstanding the exercise of the last degree of caution in making the selection.

If an employee die from the effect of injuries received through the negligence or wrongful act of his employer, his representatives under § 3 can only recover what is just and right, not exceeding $5,000. So, under the decision in the Schultz case, the negligence of the co-employee is more culpable than the willful wrong of the employer.

III. It is settled beyond question, that under the general law an employer is not liable to servants for negligence of

fellow servant, where the master uses proper care in employing and retaining such fellow servant. (See 43 Me., 209 ; 11 Ia., 421.)

IV. It may be asked why the word "person" was used in the first clause, and "passenger" in the second. The obvious answer is, that if by "person" any other than passengers and employees were included, it would be necessary to exclude them in the second clause, which could concern only passengers and employees. And the very fact that employees were not included in the second clause, raises a very strong presumption that it was not intended to include them in the first clause, for there was a greater reason for extending the provisions of the second clause to them, than for including them in the first.

V. In the construction of a statute, the proper course is to search out and follow the true intent of the legislature, and to adopt that sense which harmonizes best with the context, and promotes in the fullest manner the apparent policy and objects of the legislature. (United States vs. Winn, 3 Sum., 209.) And while an employee may be included within the words of the second section of the damage act, the conviction is irresistible that he is not within the purview of the act. It will not be presumed that the legislature, in a section enacted for the sole purpose of regulating damages, turned aside from its main purpose to create a new liability, and especially a liability that the sages of the law, for time out of mind, have held to be against public policy. (Sullivan vs. Railroad Co., 11 Ia., *supra.*)

*C. M. Wright, with H. G. Orton,* for Defendant in Error.

I. The intent of the legislature in § 2 of the damage act, was to give an employee the same remedy in case of death as was given to passengers and other persons. (Schultz vs. Pac. R. R. Co., 36 Mo., 13, and cases there cited.)

There is no obscurity in the words of the statute, and the courts should not create obscurity by construction. (31 Har., 72; Smith's Com., 822.) The decision in the Schultz case

has been the settled law of this State for ten years. (Rohback vs. Pac. R. R., 43 Mo., 194; Moss vs. Pac. R. R., 49 Mo., 167.)

PER NAPTON, Judge.

This action was brought by the widow of Michael Connor to recover the statutory penalty of $5,000 damages for the death of her husband, caused by the negligence and unskillfulness of the officers, servants, agents and employees of the defendant.

The defense was that the plaintiff's husband was a brakesman at the time of the accident, and that the collision which overturned the cars, was not the result of any negligence.

The testimony of the plaintiff on the trial tended to show the following state of facts: The gravel train of the defendant, which was in charge of the plaintiff's husband, as head brakesman, was backing up a switch, to allow a regular train to pass, and while running round a curve, ran over a cow, precipitating several of the flat cars down an embankment. Connor was on the car farthest from the locomotive, or the front car, as the train was running, and was killed. There was proof to show that the train was going at the rate of twenty-five or thirty miles an hour, though the engineer, or temporary engineer, stated that there was no steam on, and it was running on a descending grade at about five or six miles an hour.

There was also proof that the engine was at the time in charge of a fireman, the engineer being in the caboose adjoining, and that he was incompetent and had been subsequently discharged for incompetency.

On motion of plaintiff's counsel, the court instructed the jury as follows: 1st. If the jury believe from the evidence that the injuries from which Michael Connor died, were received without fault or negligence on his part; and that the injuries from which he died resulted from, or were occasioned by, the negligence of employees of the defendant while running, conducting or managing the locomotive or train of cars

on which said Connor was at the time of receiving said injury, then they will find for plaintiff; 2nd. Negligence, as used in the foregoing instructions, consists in the doing of some act with reference to the running, managing or conducting of said locomotive or train of cars by the officers, agents, servants or employees of defendant, which a reasonable, prudent man would not do, or in the omission by them to do some act with respect thereto, which a reasonable, prudent man would not omit to do.

On behalf of defendants, the court instructed the jury as follows: 1st. It is admitted by the pleadings, that at the time of his death, Michael Connor was an employee of defendant and acting in the capacity of brakeman; 2nd. Unless the jury find from the evidence that Michael Connor died from an injury or injuries resulting from, or occasioned by the negligence or unskillfulness of some officer, agent, servant or employee of defendants whilst running, conducting or managing a locomotive, car or train of cars of defendants, then they ought to find for defendants. 3rd. Even if the jury find that at the moment of the injury, the engine driving the train on which Michael Connor was killed, was being managed and conducted by an employee of defendants, who was not a skillful engineer, still the jury ought not to find for plaintiffs on that account unless they further find from the evidence that Michael Connor died from an injury or injuries resulting from or occasioned by the unskillfulness of such employee. 7th. In this cause the presumption of law is, that the employees of defendant performed their duties skillfully and carefully, and the plaintiff cannot recover unless it is proved affirmatively that the death of Connor resulted from, or was occasioned by, negligence or unskillfulness on the part of some officer, agent, servant or employee, who at the time was running, conducting or managing the locomotive, or train of cars on which the injury occurred."

The following instructions asked by the defendants, were refused by the court: "4th. From the simple fact of an accident and injury resulting in the death of Michael Connor,

no presumption of negligence or unskillfulness can arise. On the contrary, the presumption would be, that the accident resulted from misadventure or inevitable fate, or other cause for which the defendants would not be liable. Hence, in this case the plaintiff cannot recover in the absence of affirmative and positive proof that Michael Connor died from an injury or injuries resulting from or occasioned by the negligence or unskillfulness of the officer, agent, servant or employee of defendant, who was at the time of the injury running, conducting or managing the locomotive or train of cars of defendant. 5th. If the jury believe from the evidence, that Michael Connor, as head brakeman, had the charge and control, and was running, conducting and managing the train of cars at the time of the accident and injury which resulted in his death, they will find for defendant. 6th. Plaintiff cannot recover on account of any negligence or unskillfulness of the other brakeman who was braking on the train at the time of the injury which resulted in the death of Connor.

There was a verdict and judgment for plaintiff.

From the pleadings, evidence and instructions in this case, it is clear that the case was tried on a construction of the second section of the act concerning damages, given by this court in the case of Schultz vs. Pac. R. R., 36 Mo., 13.

The section referred to, is as follows : "§ 2. Whenever any person shall die from an injury resulting from or occasioned by the negligence, unskillfulness or criminal intent of any officer, agent, servant or employee, whilst running, conducting or managing any locomotive or train of cars, or of any master, pilot, engineer, agent or employee, whilst running, conducting or managing any steamboat or any of the machinery thereof, or of any driver of any stage coach or other public conveyance, whilst in charge of the same as a driver, and when any passenger shall die from any injury resulting from or occasioned by any defect or insufficiency in any railroad or any part thereof, or in any locomotive or car, or in any steamboat or the machinery thereof, or in any stage coach or other public conveyance, the corporation, individual

or individuals in whose employ any such officer, agent, servant, employee, master, pilot, engineer or driver shall be at the time such injury is committed, or who owns any such railroad, locomotive, car, stage coach or other public conveyance at the time any injury is received resulting from or occasioned by any defect or insufficiency above declared, shall forfeit and pay for every person or passenger so dying, the sum of five thousand dollars, which may be sued for or recovered ; first, by the husband or wife of deceased ; or, second, if there be no husband or wife, or he or she fails to sue within six months after such death, then by the minor child or children of the deceased ; or, third, if such deceased be a minor and unmarried, then by the father and mother, who may join in the suit, and each shall have an equal interest in the judgment ; or if either of them be dead, then by the survivor.   In suits instituted under this section, it shall be competent for the defendant for his defense, to show that the defect or insufficiency named in this section was not of a negligent defect or insufficiency."

The next succeeding sections are as follows : " § 3. Whenever the death of a person shall be caused by a wrongful act, neglect or default of another, and the act, neglect or default is not such as would (if death had not ensued) have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case, the person who, or the corporation which, would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured."

" § 4. All damages accruing under the last preceding section shall be sued for and recovered by the same parties and in the same manner, as provided in the second section of this chapter, and in every such action the jury may give such damages as they may deem fair and just, not exceeding five thousand dollars, with reference to the necessary injury resulting from such death, to the surviving parties who may be entitled to sue, and also having regard to the mitigating and aggravating circumstances attending such wrongful act, neglect or default."

As the construction given to this second section of the damage act in Schultz vs. Pac. R. R., has never been before this court since the decision of that case, so far as I am aware, and as my convictions are very well settled that the critical analysis of that section by the learned judge who delivered the opinion of the court in that case, and the conclusions to which he arrived on such examination, are totally at variance with the true intent and meaning of the act, it is proper to explain my reasons for these convictions. In doing so, I speak for myself only and with the highest respect for the abilities and learning of the judges who have expressed a different opinion.

The cardinal rule in the construction of a statute is to look mainly at the intent of the law, the defect or grievance proposed to be remedied, and the means provided to effect such remedy. The common law axiom, that "*actio personalis moritur cum persona*," was the mischief which the legislature wished to abolish, and at the same time to point out the survivors who should have the right of action. The distinctions between the right of action in passengers and employees, and the cases in which the one or the other might maintain actions, were not in the mind of the legislature in framing this enactment. They were looking in a different direction; and the use of the term " person," in the first clause of the section, and the term " passenger " in the second, and of both " passenger or person " towards the conclusion, was merely a blunder of the draughtsman, who, disregarding all the rules of punctuation, and delighting apparently in obscure, complicated and tautological phraseology, seems, suddenly, after half completing the section, to have dropped in the word " passenger " at the very place where it ought to have been omitted, and left it out at the very place where it should have been inserted in order to have carried out the real design of the act. The word " person," if carried through the section would have answered, or the words " person or passenger " in all the clauses would have created no confusion or doubt.

There was no intention of establishing any new rules of liability for damages to the party injured, where he was alive and entitled to his action, but simply to extend the benefit of that liability to certain members of the family of the injured person, when death resulted from the injury. Had any such design been entertained, it was a simple and easy task to be accomplished in plain, clear and unmistakable language.

Those who are engaged in the interpretation of statutes. or of wills, or of written instruments of any description, are fully apprised of the necessity which frequently arises of disregarding words, or transposing them, in order to carry out the primary and leading design of the paper, whether it be an act of a legislative body, or the will or deed or contract of a private person. *Qui hæret in litera, hæret in cortice.*

The object of judicial tribunals is to carry out the intent; and if such intent can be clearly gathered from the whole instrument or act, it must be carried out, though to effect this a literal interpretation must be rejected or a restricted meaning be given to words or contiguous parts of the instrument, or sections of the law on the same subject be referred to.

Now the 3rd section of this act is upon the same subject, and has in view the same general object, though in the second section the remedy is confined to certain public institutions, (if we may call them so) whether corporations or not, established to afford facilities to the traveling public; and the third is designed to furnish redress for injuries occasioned by individuals who are not engaged in business of that character. Hence a discrimination is made in regard to damages; in the former case fixing it definitely; in the latter leaving it to juries according to the facts and circumstances of the case. But the 3rd section clearly announces the object of the legislature, which was to give no new cause of action, to legislate into existence no new grounds of recovery; but to give to certain representatives of a dead man a right of action, which did not before exist in such representatives, where the man if living would have had one, and in no other case.

Another leading maxim in the interpretation of statutes, is to reject an interpretation which conflicts with the views of the legislature apparent in the enactment, and leads to such consequences as it would be disrespectful to the legislature to suppose were designed. This is in truth a mere variation of the first principle named, which requires the intention to be carried out, though at a sacrifice of words.

The interpretation of the second section advanced in the Schultz case, enlarges the rights of the employees under the first clause, and abolishes the distinction between them and passengers, but destroys their rights under the second clause, where passengers only are named, and where the employees of the company, under the law as it existed before the passage of the act, were conceded to have a right of action, and where passengers also clearly had always a right of action apart from any legislative enactment. This seems strange in a law supposed and asserted to have had in view a change of the law as established in the case of McDermott vs. Pac. R. R. (30 Mo., 115.) Now in that case, and in all the cases that have followed (and they have been numerous) the right of an employee (as well as passenger) to recover for injuries occasioned by defective machinery, etc., is conceded. But adopting the literal interpretation of the second section, as given in the case of Schultz, as the word " passenger" alone is used in the second clause, this right of the employee is destroyed, so far as his representative is concerned, in the event of his death. Was this the design of the legislature? Clearly not. Had the word " person," or the words " person or passenger," been used throughout, from the beginning to the end of the section, the whole purpose of the act would have been evident and unambiguous.

But there are other difficulties in this interpretation, which I am unable to reconcile with what is assumed to be the object of the legislature. An employee of a railroad company, who is crippled to any conceivable extent, is not supplied with any remedy; but if he is killed outright, his wife or children or parents are entitled to $5,000. What motive

could prompt a legislature to such discrimination? It looks like a premium for homicide. Why should they allow a man's wife or children $5,000, where the husband or father is killed, and refuse to allow him anything when deprived of arms or legs, or both, and a hopeless, helpless cripple, and a mere incumbrance on his family? In the one case the family are deprived of the services of the head; but in the other, in addition to this deprivation, they have the burthen and expense of maintaining for life a helpless, perhaps bed-ridden cripple. I am unable to see any reason for such discrimination, and therefore am unwilling to impute to the legislature any intention of making it.

The doctrine first advanced by this court in the McDermott case, has been reviewed and sanctioned in various decisions since, and especially in the case of Gibson vs. Pac. R. R., (46 Mo., 163) in which Judge Wagner has collated all the English and American authorities, and declared it to be the settled law of the State. It had been asserted in the case of Rohback vs. Pac. R. R., (43 Mo., 192) and is re-asserted in Harper vs. Indianapolis & St. Louis R. R. (47 Mo., 567.)

If the legislature think it wise to abolish the distinction between passengers and employees, they will surely make no distinction in favor of the representative of the injured party and against the party himself. If abolished as to one, it will be abolished as to both. So far, in my judgment, they have left this branch of the law of negligence as they found it, and in the act concerning damages, had not in view the alteration of any responsibility of companies or individuals engaged in providing accommodations for public travel, but simply designed to extend a pre-existing responsibility to certain representatives of the injured party, in case of his death. It was not designed to change the law of contributory negligence, any more than it was intended to abolish the distinction between passengers and employees.

The fifth instruction in this case should have been given, if modified so as to hold the company responsible, notwithstanding Connor was conductor and manager of the train,

if the company had been guilty of negligence in employing an unskillful engineer, or allowing such engineer to turn over the engine to a fireman who was not qualified to manage it, and the damage resulted from the conduct of the engineer or fireman. There was evidence on this point.

In my opinion, however, the pleadings will have to be amended. The judgment is reversed and the cause remanded.

WAGNER, Judge, delivered the following dissenting opinion.

I concur in reversing the judgment on the last point discussed in the above opinion; but I do not wish to be understood as assenting to anything that goes to impair the authority of the case of Schultz vs. Pacific Railroad, and in this I am requested to say that Judges Vories and Sherwood agree with me.

PER HOUGH, Judge.

I concur in reversing the judgment in this case, but as I entertain a view of the construction which should be given to the second section of the damage act, upon which the plaintiff's action is founded, different from that placed upon it by any of my brother judges, I deem it proper to present that view in a separate opinion, together with my reasons therefor.

The petition in this case alleged that the death of the plaintiff's husband was caused by the negligence and unskillfulness of the officers, servants and employees of the defendant, whilst running, conducting and managing a locomotive and train of cars on defendant's railroad. There was no allegation of any want of care or diligence, on the part of the defendant, in the selection, or retention in service, of its servants in charge of the locomotive and cars. The alleged negligence and unskillfulness were denied, and an allegation in the answer, that the plaintiff's husband was, at the time of the injury resulting in his death, in the service of defendant, as brakeman, was admitted by the replication. The petition

did not definitely allege, nor did it clearly appear from the testimony, whose negligence occasioned the death of Connor. The gravel train on which he was at the time of his death, was, while being backed out of the way of a passenger train, run over a cow and precipitated down an embankment, and he was crushed in the wreck and killed. There were on the train at the time of the accident, only an engineer, fireman and one brakeman, besides Connor. The court at the instance of the plaintiff, gave among others, the following instruction :

"If the jury believe from the evidence, that the injuries from which Michael Connor died were received without fault or negligence on his part, and that the injuries from which he died resulted from or were occasioned by the negligence or unskillfulness of the officers, agents, servants, or employees of the defendant, whilst running, conducting or managing the locomotive or train of cars on which said Connor was, at the time of receiving said injury, then they will find for plaintiff." To the giving of. which, defendant excepted.

Among other instructions asked by defendant, and refused by the court, was the following : " Plaintiff cannot recover on account of any negligence or unskillfulness of the other brakeman who was braking on the train at the time of the injury which resulted in the death of Connor." To the action of the court in refusing to give said instruction, defendant excepted. There was a verdict and judgment for plaintiff.

The sections of the damage act, the construction of which, is involved, are as follows : Sec. 2. " Whenever any person shall die from an injury, resulting from or occasioned by the negligence, unskillfulness or criminal intent of any officer, agent, servant or employee, whilst running, conducting or managing any locomotive, car or train of cars, or of any master, pilot, engineer, agent or employee whilst running conducting or managing any steamboat or any of the machinery thereof ; or of any driver of any stage coach, or other public conveyance, whilst in charge of the same as a driver ; and when any passenger shall die from any injury resulting from or occa-

sioned by any defect or insufficiency in any railroad, or any part thereof; or in any locomotive or car, or in any steamboat or the machinery thereof, or in any stage coach or other public conveyance, the corporation, individual or individuals, in whose employ any such officer, agent, servant, employee, master, pilot, engineer or driver, shall be at the time such injury is committed, or who owns any such railroad, locomotive, car, stage coach or other public conveyance, at the time any injury is received, resulting from, or occasioned by, any defect or insufficiency above declared, shall forfeit and pay · for every person or passenger so dying, the sum of five thousand dollars, which may be sued for and recovered ; first, by the husband or wife of the deceased ; or, second, if there be no husband or wife, or he or she fails to sue within six months after such death, then by the minor child or children of the deceased ; or, third, if such deceased be a minor and unmarried, then by the father and mother who may join in the suit, and each shall have an equal interest in the judgment ; or, if either of them be dead, then by the survivor. In suits instituted under this section, it shall be competent for the defendant, for his defense, to show that the defect or insufficiency named in this section was not of a negligent defect or insufficiency."

Sec. 3. " Whenever the death of a person shall be caused by a wrongful act, neglect or default of another, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who, or the corporation which would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured."

Sec. 4. " All damages accruing under the last preceding section shall be sued for and recovered by the same parties and in the same manner as provided in the second section of this chapter, and in every such action, the jury may give such damages as they may deem fair and just, not exceeding five thousand dollars, with reference to the necessary injury re-

sulting from such death, to the surviving parties who may be entitled to sue, and also, having regard to the mitigating or aggravating circumstances attending such wrongful act, neglect or default."

The common law rule that a servant cannot recover for injuries received in consequence of the negligence, or unskillfulness, of a fellow servant, unless the common master has been guilty of a want of diligence and care in the selection of the negligent or unskillful servant, or in retaining such servant after notice of his incompetency, is too firmly established by a long line of decisions of the highest courts, in England and in all the States of the American Union, where the question has arisen, to be now questioned or overthrown, save by legislative enactment.

Cases in Ohio, Kentucky and Georgia have been thought to break in upon this remarkable uniformity of decision, and announce a different rule ; but the case of Whalen vs. Mad. R. and Lake Erie Railway Co., (8 Ohio St., 249) affirmed in Manville vs. Cleveland and Toledo R. R., (11 Ohio St., 417) conforms to the general rule ; and the case of Louisville and Nashville R. R. Co. vs. Collins, (2 Duvall 114) held the company liable on the ground that the person injured was in a subordinate position, and not to be regarded as a fellow servant of the person causing the injury, thereby virtually affirming the correctness of the general rule. In the Georgia case, Scudder vs. Woodbridge, (1 Kelly, 195) generally cited as an exception, the person injured was a slave, and the court say, speaking of the rule laid down in Priestly vs. Fowler : " Interest to the owner and humanity to the slave, forbid its application to any other than free white agents." The subsequent case of Shields vs. Younge, Supt. Western and Atlantic R., (15 Ga. 349) and the case of Cooper vs. Mullins, (30 Ga., 151) recognize the rule, but limit its application by a restricted definition of the term, fellow servant. A rule so inflexibly adhered to in England, during a period of nearly forty years, and which has in a multitude of cases, at various times during a period of over thirty years, been sanctioned

and enforced by the concurrent judgment of many of the ablest judges of this country, and approvingly stated by our most learned commentators, must indeed be a wise and salutary one.

This rule is of universal application. It obtains not only where employees of railroads and other carriers are concerned, but it applies as well to laborers, operatives and employees in foundries, factories, mines, stores, hotels and warehouses, in short, wherever and in whatever employment, occupation, or business, the relation of master and servant exists, or may exist. In the language of the court in Fifield vs. Northern Railroad, (42 N. H., 225) "The responsibilities of the defendant and of the individual who hires two laborers in harvest, or two carpenters to erect staging and shingle houses, are to be determined by the same legal tests."

This rule, like that which holds the common carrier of goods to the liability of an insurer, the act of God and the public enemy excepted, and exacts the highest degree of care, vigilance and skill of carriers of passengers, is founded in considerations of expediency and public policy. In the language of Baron Abinger, in the leading English case, (Priestly vs. Fowler) "In fact, to allow this sort of action to prevail would be an encouragement to the servant to omit that diligence and caution which he is in duty bound to exercise on the behalf of his master, to protect him against the misconduct or negligence of others who serve him, and which diligence and caution, while they protect the master, are a much better security against any injury the servant may sustain by the negligence of others engaged under the same master, than any recourse against his master for damages, could possibly afford."

In the leading American case, Farwell v. The Boston & Worcester Rail Corp., 4 Met., 49, Chief Justice Shaw says: "Where several persons are employed in the conduct of one common enterprise or undertaking, and the safety of each depends much on the care and skill with which each other shall perform his appropriate duty, each is an observer of the con-

duct of the others, can give notice of any misconduct, incapacity or neglect of duty and leave the service if the common employer will not take such precautions and employ such agents as the safety of the whole party may require. By these means the safety of each will be much more effectually secured, than could be done by a resort to the common employer for indemnity, in case of loss by the negligence of each other. Regarding it in this light it is the ordinary case of one sustaining an injury in the course of his employment, in which he must bear the loss himself or seek his remedy, if he have any, against the actual wrong-doer."

The same rule has been repeatedly announced by this court. (McDermott vs. P. R. R., 30 Mo., 115; Rohback vs. P. R. R., 43 Mo., 192; Gibson vs. P. R. R., 46 Mo., 163; Harper vs. Ind. & St. Louis R. R., 47 Mo., 567; Moss vs. P. R. R., 49 Mo., 167; Devitt vs. P. R. R., 50 Mo., 302; Brothers vs. Carter, 52 Mo., 372.)

Passengers and employees compose the two classes of persons mainly interested in the management of trains, and the character and quality of the means of transportation employed; and while provision against danger and injury to each of these classes is always required, the security of the passenger is of primary importance, and the common law liabilities to each, are based upon the different character of the relations held, by each, to the carrier. The transportation of the passenger, with expedition and safety, is the sole purpose of the employment by the carrier of servants for the management of passenger trains. The servant and the master are, as to the passenger, but a single person, and as to him, no degree of diligence and circumspection on the part of the master in the selection of his servants, will exempt the carrier from liability for injuries arising from the negligence or unskillfulness of his servants. The negligence of the servant is, in such case, the negligence of the master.

But in case of an injury to a passenger, arising from insufficient or defective carriages, or machinery, the carrier may excuse himself by showing that he exercised the utmost care

and diligence in providing such carriages and machinery, and that the defects, producing injury, could not have been discovered by the most careful and thorough inspection. (Redfield's Am. Railw. Cas., 471.)

So, too, the employee has a right of action against the master for injuries arising from defective or insufficient machinery, implements or appliances, furnished by the master to him, if the master has been guilty of negligence or want of proper care in providing such machinery, implements or appliances, and the servant used the same without any knowledge that they were defective, or insufficient. (Gibson vs. P. R. R., 46 Mo., 163 and cases cited; Devitt vs. P. R. R., 50 Mo., 302 and cases cited.)

The construction placed upon the second section above quoted, by the able and accomplished judge who delivered the opinion of the court in the case of Schultz vs. P. R. R., 36 Mo., 13,) obliterates, to some extent, the foregoing distinctions, and in my judgment, confounds the wisdom of the common law, and leads to consequences grossly incongruous and palpably unjust. It is held in that case, that the words "any person" in the first clause of the second section, include fellow servants, or co-employees, as well as passengers and strangers, and that in an action by the representatives of an employee, under the provisions of that section "there need be no proof (in such case) of any negligence or want of care and diligence on the part of the employer, in selecting his agent and servant, for the act does not rest the liability on any negligence of that kind, though the liability at common law, for injuries occasioned by such negligence may still remain, as before, unaffected by the statute."

Under this construction, a servant who is injured by the negligence of a fellow servant, without any fault or negligence on the part of the common master in the selection, or retention, of such negligent servant, though reduced to a condition of permanent and helpless dependence, and thereby rendered an object of constant care, commiseration and expense to his family, can recover nothing; whereas, if his injuries should re-

sult in death, though that death should occasion less painful and disastrous consequences to his family than a life of lingering agony and destitution, his representatives can recover the sum of five thousand dollars. No motive of charitable benevolence, or dictate of public policy, can in my judgment justify such a distinction. Again, what wise purpose is to be subserved in providing by statute, a gratuitous life insurance of five thousand dollars, in favor of representatives of the employees of carriers, against the negligence of their fellow servants, thus making them a favored class, while no such statutory legacy is provided for the myriads of operatives and employees engaged in every department of labor and business throughout the State, many of whom are, equally with the employees of carriers, exposed to danger and death from the nature of their service, and are not inferior to them perhaps in culture, character and personal worth, and whose lives are of equal value to their families and to society. I cannot think that the legislature intended any such unjust discrimination. Certainly, no additional security to the traveling public could be expected to result therefrom, in view of the combined and oft-repeated judgment of the Bench of England and America during nearly half a century, that the greatest security, in this regard, is to be attained by the enforcement of the common law rule. Besides, the statute is as applicable to trains, boats and vehicles, which carry freight only, as to those which carry passengers. And if such were the object of the legislature in the enactment of the second section, why did they not give the servant a right of action, when injured through the negligence of a fellow servant, the master not being in fault, though death should not ensue? Any negligence, producing injury, should, if such were the purpose, give a right of action, and not negligence producing only mortal injury. The grossest negligence may sometimes be capriciously followed by slight injury, and the slightest neglect may at other times be attended by the most disastrous consequences.

Again, what satisfactory reason can be assigned for giving the representatives of an employee of a carrier, a right of action for an injury resulting in death, occasioned by the negligence of a co-employee, in managing a locomotive or train of cars, without any proof of negligence on the part of the master, and denying a right of action for an injury resulting in death, occasioned by a defect or insufficiency in the machinery and means of transportation employed, unless the master has been guilty of negligence in providing or continuing to use the same? Public policy as imperatively demands perfect machinery and appliances as it does diligent servants. If any distinction should be made in this regard, as between master and servant, it would seem that the rule, as stated above, should be reversed; and in case of death, the master held absolutely liable for defective machinery furnished to the servant, and only conditionally liable for the negligence of those human agencies employed by him, having freedom of volition and action, and whose motives and conduct he cannot always foresee or control.

Again, why should the representatives of the servant of a carrier, be entitled to recover the sum of five thousand dollars, for the negligence of a fellow servant producing his death whilst running, conducting and managing a locomotive or train, which does not carry passengers, where the master is not in fault, and no such right be given to the representatives of a servant of a carrier killed by the negligence, or unskillfulness of a fellow servant when jointly engaged in any other service of the carrier?

Again, why should the representatives of an employee killed by the negligence of a fellow servant, be entitled to recover from the master who has been guilty of no fault, the sum of five thousand dollars absolutely, and when killed by defective machinery through the fault of the master himself, be entitled to recover under the third section, such sum as a jury may deem fair and just, not exceeding the sum of five thousand dollars, reference being had to the necessary injury resulting from such death, to the parties entitled to sue, and

also to the circumstances attending the neglect or default producing the death?

The foregoing are some of the incongruities attending a literal interpretation of the words "any person" in the second section. And if we are "to stick in the bark," I do not see why, under the first clause of that section, a recovery may not be had, even where the employee may have himself been guilty of negligence contributing directly to occasion his death; for such negligence is not inconsistent with negligence on the part of a fellow servant, without which, the injury and death could not have occurred. Contributory negligence, as the designation itself implies, can only exist where the injury is the result of the combined negligence of the plaintiff and defendant. Where plaintiff's negligence is the sole cause of the injury, it is not contributory. But as this is a common law defense, not provided for by the statute, which is and must always be allowed against "any person," whether passenger, stranger or employee, what warrant is there in the statute for saying that no other common law defense shall be permitted. If the language of the statute must be relaxed to admit one common law defense, why should the other common law defense be denied, that where "any person," injured and dying, happens to be a fellow servant of the servant or employee, causing his death, there can be no recovery unless some negligence of the master be shown in the selection, or retention of such servant? Admit such a defense, and the statute would still give a right of action to the representatives of those employees who are not fellow servants of the servant, causing by his negligence, their injury and death.

In ascertaining the intention of the legislature, which is the object to be attained in the construction of all statutes, we are not always limited to the language of the act. Courts are to consider the subject matter, the effects and the reason of the statute, in order to discover the intention. "Those statutes which comprehend all things in the letter, they (the sages of the law) have expounded to extend to but some things; those which generally prohibit all people from doing such an

act, they have interpreted to permit some people to do it, and those which include every person in the letter, they have adjudged to reach some persons only."

Nor are we without authority as to the construction of the words "any person" in similar statutes in this State, and in other States.

In the revised statutes of Maine, was the following section. "Every railroad corporation shall be liable for all damages sustained by *any person*, in consequence of any neglect of the provisions of the foregoing sections, or of any other neglect of any of their servants, or by any mismanagement of their engines, in an action on the case, by the person sustaining such damages." In the case of Carle vs. Bangor & Piscataquis Canal & R. R. Co., 43 Me., 269, the words "any person," in this statute, were held not to include servants of the defendant, who were injured by their fellow servants, and the court say "statutes, unless plainly to be otherwise construed, should receive a construction not in derogation of the common law."

The words "any person" in a similar statute of Iowa, were in the case of Sullivan vs. Mississippi & Missouri R. R. Co., 11 Iowa, 421, held not to include fellow servants. That statute was as follows : "Every railroad corporation shall be liable for all damages sustained by *any person* in consequence of any neglect of the provisions of this act, or of any other neglect of any of their agents, or by any mismanagement of their engineers, by the person sustaining such damages."

The thirty-eighth section of the general corporation law, applicable to railroad companies in this State, makes it incumbent on all railroad companies to have a bell placed on each locomotive engine, to be rung at a distance of at least eighty rods from the place where the railroad shall cross any traveled public road or street, and kept ringing until it shall have crossed such road or street, or to sound a steam whistle, except in cities. The last clause of the section is as follows : " And said corporation shall also be liable for all damages which shall be sustained by *any person* by reason of such neglect."

The words " any person " in this clause were held, in the case of Rohback vs. P. R. R. (43 Mo., 187), not to include fellow servants. In that case the court say, " It is obvious that the enactment of the law was intended primarily for the protection of the traveling public and passengers ;" and further, " that the draftsman of the law used the word "person" in the sense that it should apply to the classes above referred to, and without any intention of changing the common law construction, can scarcely be questioned." After referring to the second section of the damage act, and the Schultz case, (36 Mo., 13) the court further say, " both acts were passed by the same legislature. They show clearly that the law as it existed was understood by that body ; that in one case a modification was intended to be made, and in the other not. If it had been intended that the 38th section should change the law, so as to allow persons to sue, who had been previously barred, words of similar import to those used in the damage act would have been employed." The letter of the statute is thus made in that case to yield to the intent of the legislature. I have attentively considered these two sections, and with the highest respect for the great abilities of the learned judge who delivered the opinion of the court in the Rohback case, I feel compelled to say that I am unable to perceive how the use of the words employed in the first clause of the second section of the damage act, can indicate that a modification of the common law was intended, if the words employed in the thirty-eighth section of the corporation law, fail to indicate an intention to change the common law. If the naming in the damage act of the servants and employees whose negligence or unskillfulness shall give a right of action to the representatives of " any person" dying from injuries thereby received, can be claimed to constitute the distinction, I can still see no real difference between the two provisions. The thirty-eighth section clearly contemplates that the bell required to be placed on each locomotive, shall be rung by the servants of the company in charge of such locomotive, and the remedy is as clearly given to " any person" who shall be

Connor v. Chicago, R. I. & Pac. R. R. Co.

injured in consequence of the failure of any servant or employee of the company to ring said bell as therein required. Rohback, injured, but living, had no right of action for the injuries inflicted in consequence of the failure of the servants of the company to ring the bell, and yet had he died from such injuries, under the rule laid down in the Schultz case, his representatives could, on the same state of facts, have recovered five thousand dollars; for it would undoubtedly have been held, that the failure to ring the bell or sound the whistle constituted negligence on the part of the servant or employee in charge of, or running, conducting and managing the locomotive. The decision in the Rohback case is supported by reason and authority, and is undeniably right, on the point involved, but I cannot concur in its indorsement of the Schultz case.

It is evident to my mind, from the whole scope of the damage act, that the purpose of the legislature in the second section, was simply to cause those actions to survive to certain representatives of the deceased, in the cases there named, which according to the rules of the common law died with the person, and to limit the amount of the recovery in such cases. No new right of action is given by the third section; no new right of action is given as to passengers or strangers in the second section; that is to say, the right of action which the passenger himself or a stranger, would have had, if injured, but not killed, is made in the event of death, to survive; and if the words, " any person " shall be held to mean passengers and strangers, and such employees only as are not fellow servants of those causing their death, then no new liability will be created as to any one, by the second section, and the several parts of this statute will constitute a consistent and harmonious whole.

The injustice and impolicy of such a construction of the second section as would, to use a pardonable solecism, make a right of action survive which had no existence either at common law or by statute, is, I think, manifest. The legislature did not intend to create new liabilities ant of th

tion of master and servant. It was not legislating upon the relation itself, but was concerned only in making common law remedies to survive. The only object of the second section was to give to the representatives of all persons, who could have maintained an action at common law, if death had not ensued, in the cases therein enumerated, the liquidated sum of five thousand dollars; and the object of the third section was to give in all other cases, where an action could have been maintained at common law, such sum as the jury might deem fair and just, not exceeding five thousand dollars, regard being had to the attendant circumstances; and this section applies to the employees of carriers, as well as to other persons. (Brownell vs. P. R. R., 47 Mo., 242; Moss vs. P. R. R., 49 Mo., 167; Devitt vs. P. R. R., 50 Mo., 302.)

I am of opinion, therefore, that the doctrine of the Schultz case should not be adhered to; and as all persons on the train, who were charged with having occasioned, by their negligence and unskillfulness, the death of Connor, were his fellow servants, I think that plaintiff's first instruction should have been refused, and the sixth instruction asked by the defendant should have been given.

End of February Term, 1875, at St. Joseph.