Rohback v. The Pacific Railroad.

CHARLES ROHBACK, Plaintiff in Error, *v.* THE PACIFIC RAILROAD, Defendant in Error.

1. *Corporations, Railroad—Damages—Servant, injury to by fellow-servant.*— A servant of a railroad corporation who is injured by the negligence or misconduct of his fellow-servant can maintain no action against the master for such injury, unless the servant by whose negligence or misconduct the injury is occasioned is not possessed of ordinary skill and capacity in the business intrusted to him, and the employment of such incompetent servant is attributable to the want of ordinary care on the part of the master.

2. *Corporations, Railroad — Servants — Construction of Statute.*— Servants and employees of a railroad corporation are not to be included in the designation "any person," according to the true meaning of the act concerning railroad companies. (Gen. Stat. 1865, p. 342, ch. 63, § 38.)

### *Error to First District Court.*

The cause originated in the Cole County Circuit Court. The petition alleges that in April, 1866, the plaintiff was rightfully upon the track of defendant, at a point within the city of Jefferson, and that a locomotive and train of cars of defendant then and there stood at rest on said track; and that the agents and servants of defendant, without ringing a bell or giving any other signal, negligently and carelessly put the said locomotive and train in motion, and negligently and carelessly ran the same over plaintiff, by which both his legs were fractured and he was otherwise injured, and for which a judgment for $5,000 is asked.

The answer denies all the material allegations of the petition, and also avers that the plaintiff was, at the time of receiving the injury, a servant and employee of defendant, and denies his right of action against defendant.

The plaintiff then files his replication, which denies the averment of the answer which charges that the plaintiff was a servant of defendant. The evidence on the part of the plaintiff shows that the plaintiff was, at the time of receiving the injury, a servant of, and at the time in the actual employ of, defendant. The testimony also tends to show that at the time of the injury the plaintiff, with divers other servants of defendant, was at work on the main track and switches of defendant, digging and shoveling dirt, between Jefferson and Madison streets, in said city (which

part of the track is upon what is called the "yard" of defendant); and that other servants of defendant were, at about the same time and place, engaged in "making up" a train, and in doing so had, just immediately before the accident, passed up and down once or twice, or perhaps oftener, on the tracks where plaintiff and others were at work; and that finally, in backing the train, the plaintiff, failing to get out of the way, was run over by it and received very severe injuries.

The case was taken by writ of error to the First District Court, where the judgment of the Circuit Court was reversed, and the plaintiff below brings the case to this court by writ of error.

*Budd, Ewing & Smith*, for plaintiff in error.

I. The plaintiff in error is entitled to recover at common law. (Chamberlain v. W. & W. R.R., 11 Wis. 238, 250.) This construction of the law is aided by statute. (Gen. Stat. 1865, p. 342, § 38, and p. 601, § 2.) These statutes make no distinction against employees, but by the words "any person" include equally servants and strangers. (Schultz v. Pacific R.R., 36 Mo. 13.) The statute last above cited was probably intended rather to designate the persons to whom the right of action should survive, and to limit the amount of damages, than as a reward offered to the wife of the injured employee to let her wounded husband die of his wounds. The rule which denies to employees the right of action against their superior for injuries caused by the negligence of fellow-servants is said to be founded upon public policy, or upon an implied contract by the employee to assume the risk of such injuries, or upon the presumption of contributory negligence by the injured fellow-servant. But it is submitted the courts will not maintain a public policy which is not recognized by the Legislature of the State, and is inconsistent with statute law. Contributory negligence, as other matters of defense, should be established by evidence. The case of McDermott v. Pacific Railroad, 30 Mo. 115, was decided without reference to the said statutes. And the injury for which the action was brought occurred before said acts were passed.

II. But the rule in the McDermott case will not defeat the

plaintiff in error of his action against the Pacific railroad. McDermott was a brakesman on a train of cars which was precipitated into the Gasconade river; and he was there injured, as he charges, by the negligence of the engineers, servants, etc., of the Pacific railroad. The rule in that case, as defined by Judge Holmes, is, substantially, that the superior is not liable to answer in damages to a servant for injuries occasioned by the negligence of a fellow-servant, "whilst engaged in the same general employment and under the same employer or master." (36 Mo. 28-9.) And the case was decided on the authority of Farwell v. B. & W. Railroad, 4 Met. 49, which was an action by an engineer against the B. & W. railroad for injuries caused by the negligence of a switch-tender. Shaw, C. J., cautioned against the extension of the rule, but thought the engineer within its terms, because the "separate duties" of the engineer and switch-tender all "tended directly to one and the same purpose—that of the safe and rapid transmission of the trains." In both these cases, it seems, the general employment of the negligent and injured employees was understood to be the transmission of the trains, "and to this their separate duties directly tended." This is the extent to which the rule restricting the principle *respondeat superior* had obtained in Missouri. And in view of the statute extending that principle, courts will not, perhaps, further restrict it. The plaintiff in error is not barred by the rule as here construed. He was a laborer on an extra side track, which was out of repair, and upon which a train of cars should not have been run at the time. His special or "separate duties" did not "tend directly to the safe and rapid transmission of the train" then in charge of the engineer by whose negligence he was injured. They were not engaged in the same general employment. (Sto. Ag. § 453 *f*. ; Young v. N. Y. Central R.R., 30 Barb. 229 ; Gillenwater v. Madison & I. R.R., 5 Port., Ind., 339 ; Fitzpatrick v. New Albany & Salem R.R., 7 Port., Ind., 436.)

III. By General Statutes 1865, p. 342, § 38, it is made the duty of a railroad corporation to cause a bell to be rung continuously on a locomotive when approaching a public crossing in a city, and within the distance of eighty rods of such crossing; and

for each neglect of that duty a penalty is imposed on the corporation. The omission to cause the bell to be rung seems to be negligence in the corporation. A corporation is liable in damages to employees for injuries caused by its own negligence. The neglect to cause the bell to be rung on any part of the space included within the eighty rods was an omission of duty for which the corporation is liable to a penalty; for the bell must be kept ringing. For omission of duties imposed by statute, the party aggrieved has an action at common law. (Sedg. Dam. 572 and note, § 564.) The evidence shows that the plaintiff in error was within much less than eighty rods of the aforesaid Monroe street crossing. He was also at or near the said Jefferson street crossing, on said Pacific railroad. No train of cars could legally approach or pass the place where he then was without ringing a bell on the locomotive, which duty was omitted, and he sustained damages by reason of that neglect.

IV. But the statute expressly provides that the corporation "shall be liable for all damages which shall be sustained by any person by reason of such neglect." This statute extends the principle or legal maxim *respondeat superior;* for the words "any person" include employees. (Schultz v. Pacific R.R., 36 Mo. 13, 28–31.) This suit is properly brought as an action at common law. (1 Chit. Pl. 132, 142; Sedg. Dam. 572, above cited.)

*E. L. King & Bro., G. T. White,* and *John Doniphan,* for defendant in error.

The plaintiff, having been a servant of the defendant at the time of receiving the injury, cannot, at common law, recover without showing that the injury was willfully and wantonly inflicted, or that the company did not exercise ordinary care and diligence in the selection of its servants, nothing of which is claimed in this case. (30 Mo. 115; 4 Met. 49; 10 Cush. 228; 6 *id.* 75; 9 *id.* 112; 3 *id.* 270; 6 Barb. 231; 6 Hill, 592; Redf. Rail. 387; 1 McMullan, 385; 11 Iowa, 421; 8 Ohio, 249; 10 Ired. 402.) The question, then, is whether there is any statute law of this State under which he can recover. The case of Schultz v. Pacific Railroad, 36 Mo. 13, is cited and commented

on a good deal as being directly in point in this case. We submit that it is not in point at all. The statute under which Schultz recovered (Gen. Stat. 601, § 2) gives a right of recovery only in cases where death ensues; and the words "person" and "passenger" are so used as to show that it was evidently in the minds of the law-makers to give protection to both classes, persons and passengers. And even in that case, where the words "person" and "passenger" were both used, and used disjunctively, it was to some extent a question for argument by the court, and in the mind of the learned judge, whether it was really the intention of the Legislature by that statute to change the doctrine of the common law on that question. There is no similarity whatever between the case of Schultz and this one, except that both were servants of the road at the time of being injured. But it is contended that this suit may be remanded under the thirty-eighth section of chapter 63, General Statutes, and that, too, simply because the word "person" is used in that section instead of the word "passenger," wherein it speaks of who may recover under it. The sole object and intention of the Legislature was to give an additional or better protection to the traveling public at the crossing of a public road or street and a railroad track, and no argument could make it plainer that such was the intention than the very wording of the section itself. It certainly cannot be contended that the Legislature, by the use of the word "person" in this obscure section of a corporation law, intended thereby to change the old and well-established doctrine of the law on the subject of the responsibility or liability of masters to servants in cases of this kind. Why give servants a greater protection at the crossings of public roads or streets than at crossings of private roads, or than at any other point on the road, or than on trains at any point? Servants of a railroad company are expected to be, and most generally are, less about crossings or public roads than at any other point, and less exposed to danger thereabouts than on trains or on other parts of the road; while the reverse is true of other persons not connected with the railroad, who travel public roads and streets, and consequently, knowing but little or nothing definitely about the movements of trains, etc., are

exposed to danger, and these are the persons evidently intended to be protected.

The plaintiff, having taken upon himself, when he entered the service of defendant, all the risks and hazard of such business or employment, and failing to come within the class protected by the statute, cannot and ought not to recover. (See authorities heretofore cited.)

WAGNER, Judge, delivered the opinion of the court.

This was an action brought by the plaintiff to recover damages for injuries received by being disabled by a train on defendant's track. The plaintiff was at work, as a servant or employee of the road, at a place near the foot of Jefferson street, in the city of Jefferson, where the railroad track crosses a traveled public road and street. It is alleged that the engineer and conductor of a train of cars belonging to the defendant, without ringing the locomotive bell or sounding the whistle, or in any manner giving notice, carelessly and negligently ran or backed said locomotive and train of cars up to said crossing, and on and over said defendant, who was at the time at work, with his face from the train, and, in consequence of such failure to ring the bell, did not observe its approach in time to escape. The evidence seems to sustain the allegations, and, assuming them to be true, the question is whether the action is maintainable.

Upon a trial in the Circuit Court the plaintiff had judgment, which was reversed in the District Court on appeal. The case has been argued in this court for the plaintiff upon two grounds: First, that the action was authorized at common law. Second, that the statute regulating railroad companies expressly warrants it.

As to the first ground, it may be said that the prior decisions of this court are in direct opposition to it. In McDermott v. Pacific Railroad Company (30 Mo. 115) the point was sharply presented, and it was held that a servant who is injured by the negligence or misconduct of his fellow-servant can maintain no action against the master for such injury, unless the servant by whose negligence the injury is occasioned is not possessed of ordinary skill and capacity in the business intrusted to him, and

Rohback v. The Pacific Railroad.

the employment of such incompetent servant is attributable to the want of ordinary care on the part of the master. This rule of exemption was first established by Ld. Ch. Baron Abinger, in the Court of Exchequer, in Priestley v. Fowler (3 Mees & W. 1), decided in 1837. The English authorities are universal and harmonious in its support. Shortly after the case of Priestly v. Fowler, the point was decided in the same way in Murray v. The South Carolina Railway Company (1 McMullan, 385); and in 1842 the question came up in the Supreme Court of Massachusetts, in Farwell v. The Boston and Worcester Railroad corporation (4 Met. 49), and the doctrine was reasserted and enforced by the late Chief Justice Shaw, in one of the ablest and most powerful opinions ever delivered from the bench. This latter case has ever since been regarded as the leading decision on the subject.

The weight of American authority is overwhelmingly and decisively on the same side. There are a few cases which have held otherwise, but they are exceptional. In a late case in the Court of Appeals in Kentucky, the rule was denied, and damages awarded against a corporation. In Ohio, formerly, the principle was repudiated, or, to speak more correctly, greatly qualified; but in the most recent case that we have seen from that State, involving the identical point presented by the case now under consideration, it was held that where one of the trackmen was injured by the neglect of the fireman on one of the trains, an action would not lie. (Whalen v. M. R. & S. E. R.R., 8 Ohio St. 249.)

Were the question *res nova*, I should hesitate long before I would give to the rule an unqualified approbation. In many cases it produces the grossest injustice, and grants an immunity or exemption which shocks the moral feelings. But in view of the law being settled for many years in this State, and the great weight, respectability, and, I might add, uniformity of the authorities in the same way, I consider that we are bound to yield an assent, or at least acquiesce in the doctrine, however reluctant we may be to adopt it. The next question to be determined is, can the action be sustained by reason of any statutory provision?

The case of Schultz v. Pacific Railroad (36 Mo. 13) is not an authority here. That case was brought, by the widow of a deceased husband, under the second section of the act for the better security of life and property. (R. C. 1855, p. 647 ; Gen. Stat. 1865, ch. 147, § 2.) There the statute gives the action in plain and unmistakable terms, and abrogates and modifies the common law. If the present case be sustainable at all, it must derive its support from the thirty-eighth section of the statute in relation to railroad companies. (Gen. Stat. 1865, ch. 63.) That section makes it incumbent on all railroad companies to have a bell placed on each locomotive engine, to be rung at a distance of at least eighty rods from the place where the railroad shall cross any traveled public road or street, and be kept ringing until it shall have crossed such road or street. The last clause of the section declares: "And said corporation shall also be liable for all damages which shall be sustained by any person by reason of such neglect."

The whole question is, whether servants or employees of the company are to be included within the designation "any person," according to the true sense and meaning of the act.

The section is a transcript of the New York statute, and it is there decided that the omission by a railroad company to give the signals required on the approach of a locomotive within eighty rods of a highway crossing is a breach of duty to the passengers, whose safety it imperils ; and to the wayfarer, whom it exposes to mutilation and death. (Ernst v. The Hudson River R.R. Co., 35 N. Y. 9.)

After a somewhat careful examination, I have been unable to find any case where it was sought to bring a servant within its provision. It is obvious that the enactment of the law was intended primarily for the protection of the traveling public and passengers. At a public crossing or street, frequented by travelers and persons engaged in business, the danger of collision and accident is constant and recurring, without a signal warning them of the approach of the train.

Not only is danger to be apprehended to those who may happen to be on the track, but the lives of the passengers are also jeopar-

Rohback v. The Pacific Railroad.

dized. The law, in a previous part of the section, subjects the company to a penalty for omission of duty in ringing the bell; but, lest that might be deemed exclusive, it also makes it responsible in damages at the suit of any person injured. There is a strong and peculiar reason why this precaution of giving a signal should be observed, as regards passengers and the traveling public, but it is not apparent when it comes to be applied to the servants of the road. There is nothing to show that from their business and occupation they are in greater hazard at a public crossing than at a private crossing or anywhere else on the track. That the draftsman of the law used the word "person" in the sense that it should apply to the classes above referred to, and without any intention of changing the common-law construction, can scarcely be questioned. In this view of the law we are strengthened by the different phraseology used in the second section of the act relating to damages, and on which Schultz's case was based. That section provides that "whenever any person shall die from any injury resulting from or occasioned by the negligence, unskillfulness, or criminal intent of any officer, agent, servant, or employee, whilst running, conducting, or managing any locomotive, car, or train of cars, etc., it shall be responsible to the representatives of the deceased." Both acts were passed by the same Legislature. They show clearly that the law as it existed was understood by that body; that in one case a modification was intended to be made, and in the other not. If it had been intended that the thirty-eighth section should change the law, so as to allow persons to sue who had been previously barred, words of similar import to those used in the damage act would have been employed. I am satisfied that this is a case of great hardship, but sympathy cannot be permitted to unsettle the law.

There was a question made in regard to a change of venue, but, from the disposition that will be made of the cause, it is unnecessary to notice it. Judgment affirmed. The other judges concur.