————o————

WILLIAM BROTHERS, Respondent, *vs.* MILO S. CARTTER, *et al.*, Appellants.

1. *Servants—Negligence of co-servants—Master, liability of.*—The master is not liable for injuries received by a servant, caused by the negligence of a co-servant, unless the latter is not possessed of the ordinary skill and capacity for the business intrusted to him, and unless his employment is attributable to the want of ordinary care on the part of the master.

2. *Master—Delegation of his authority—Injury to servant.*—When a Master delegates to a superintendent the power to employ and discharge servants and to provide and remove material, which duties adhere to him as master, he thereby makes himself liable for any injuries sustained by his servants, caused by the lack of care or negligence of such superintendent.

*Appeal from St. Louis Circuit Court.*

*Lackland, Martin & Lackland, and Dryden & Dryden,* for Appellants.

I. The plaintiff could judge of the sufficiency of the braces, and other timbers, as well as the defendants. In such cases the master is not liable. (Williams vs. Clough, 3 H. & N., 259; Dynen vs. Leach, 26 Law Journal, [N. S.] Exch., 221; Wright vs. N. Y. Cent. R. R., 23 N. Y., 566; Hayden vs. Smithville Manuf'g Co., 29 Conn., 548; Griffith vs. Gidlow, 3 Hurlst, & Norm., 648; Devitt vs. Pac. R. R., 50 Mo., 302; Warner vs. Erie R. R. Co., 39 N. Y., 470; Ormond vs. Holland, El. B. & El., 100.)

II. The evidence showed that the failure to supply was the act or omission either of Graham or Logan. They were fellow

servants with plaintiff. The doctrine claimed by plaintiff's counsel, that a superintendent, such as Graham, is a "representative," or "*alter ego*" of the master, is not well founded. (Wilson vs. Merry, 1 Scotch & Div., Appeals 326 ; Feltham vs. England, 2 Queen's B., ·32 ; Gallaher vs. Piper, 16 C. B. [N. S.] 680, and note to same ; Searle vs. Lindsay, 11 C. B. [N. S.] 430 ; Wigmore vs. Jay, 5 Exch., 354 ; Albro vs, Awagam Can. Co., 6 Cush., 75 ; Wright vs. New York Cent. R. R., 25 N. Y., 562 ; Warner vs. Erie R. R. Co., 39 N. Y. 470 ; Faulkner vs. Erie R. R., 49 Barb. 324 ; McDermott vs. Pacific R. R., 30 Mo. 115; Caldwell vs. Brown, 53 Pa. St., 453.)

III. The duty of finding, selecting, and furnishing the materials necessary for a work, is one which the master must very often entrust to his servants. He cannot give personal attention to that part of the business, any more than he can to the details of the application of the material furnished. He can no more foresee and prevent the neglect of his servants in furnishing than he can their neglect in applying. The fellow servant can foresee such neglect as well as the master, and takes the risk of it. (Wright vs. N. Y. Cent. R. R., 25 N. Y. 572; Gallaher vs. Piper, 16 C. B. (N. S.) 680; Warner vs. Erie R. R. Co., 39 N. Y., 470 ; Priestly vs. Fowler, 3 M. & W., 1.)

*Steward & Wieting*, for Respondent.

The master cannot evade his responsibility by delegating to another the power to employ and discharge servants and to provide suitable materials. (Shearman & Redfield, on Negli gence § 102 ; Gibson vs. Pacific R. R., 46 Mo., 163 ; Harper & Indianapolis R. R., 47 Mo., 567 ; 45 Ill., 201 ; 52 Ill., 183 ; 22 Ala., 294.)

WAGNER, Judge, delivered the opinion of the court.

This was an action for damages received by the plaintiff while in the employ of defendants in the construction of a bridge across the Aux Vasse river, in the County of Callaway, Missouri, for the Fulton and Jefferson Branch of the Louisiana and Missouri Railroad. The material averment in the

petition is, that while plaintiff was at work on the bridge, one span fell, and plaintiff was precipitated a distance of seventy-three feet upon the rock and debris beneath, and was thereby seriously injured.

The cause of the falling of this span of the bridge is alleged to have been the insufficiency in amount and quality of the bracings and false work used in the construction of the span, that defendants failed to furnish proper and sufficient material for the erection of said structure, and because of the removal by defendants of supports and bracings, which had been furnished for this purpose, to make the structure safe and secure during its construction; and that defendants well knew of the insecure condition of the structure and of the deficiency and insufficiency of the materials furnished for the same and of the dangerous condition of the structure, and that in consequence of defendants' negligence and recklessness in and about the premises, plaintiff was injured, &c.

The plaintiff gave evidence strongly tending to prove his averments.

It appears that the defendants did not personally have charge of the work, and what they knew of its character and condition was from being about it occasionally during its progress.

They did not attend personally to the purchase and collection of materials, or to directing the construction. The former duties were committed to the superintendent Graham, and the latter to the foreman Logan.

The Jury rendered a verdict for the plaintiff, and as there was ample evidence to support it, of course this Court will not interfere, unless they were misled by wrong instructions.

The instructions given for both parties taken together fairly presented the law, and the second instruction given for the plaintiff is the only one that is seriously complained of here. That instruction is, as follows: "If the Jury find from the evidence that one John Graham was the Superintendent for defendants of the work on the bridge in question, and as such had entire control and charge thereof with power to employ

and discharge hands, and to provide and remove material, and that said Graham was the representative of defendants in the construction of said bridge, and that plaintiff was subject to his orders and directions, then the Jury are instructed that said Graham was not a fellow servant with the plaintiff, and that his acts and conduct in connection with said bridge were and are the acts and conduct of defendants so far as this case is concerned."

The other instructions essentially lay down the law as it was declared by this Court in the case of Gibson vs. Pacific Railroad Co. (46 Mo., 163,) that where injuries to a servant were owing to improper or defective machinery or appliances used in the prosecution of the work,—the condition of which by reasonable and ordinary care and prudence the master might know,—and not to the lack of care and prudence in the servant, the master would be liable. That the legal implication was, that the employer would adopt suitable instruments and means with which to carry on his business, and if he failed to do so he was guilty of a breach of duty under his contract, for the consequences of which in justice and sound reason he would be responsible.

In that case we also held, affirming the cases of McDermott vs. Pacific R. R. Co., (30 Mo., 115;) and Rohback vs. Pacific R. R. Co., (43 Mo., 187;) that where injuries to servants or workmen happen through the negligence, misfeasance or misconduct of a fellow servant, no action therefor can be maintained against the master, unless the fellow servant is not possessed of the ordinary skill and capacity in the business intrusted to him, and unless his employment is attributable to the want of ordinary care on the part of the master.

The question then is, if Graham was defendants' Superintendent and had entire control of the work, with power to employ or discharge hands and to provide and remove material, whether he was a fellow servant within the meaning of the term. If a workman or servant is to work in conjunction with others, he must know that the carelessness of one of his fellow-servants may be productive of injury to himself, and he

must know that neither care or diligence by the master can prevent the want of due care and caution on the part of his fellow-servants. The servant on entering upon the employment is supposed to know and assume this risk. But does he risk the carelessness and negligence of those placed over him, in the selection of suitable materials, machinery and the appliances incident to the employment?

He acts in subordination. His simple duty is obedience. He has no means or opportunity of knowing, whether the articles furnished are safe, and has to rely on the judgment of his superiors.

If the master in person superintends the work, then there is no controversy or dispute as to where the responsibility belongs.

If the master deputes the superintending control of the work, with the power to employ and discharge hands and purchase and remove materials, to an agent, then the master acts through the agent and the agent becomes the master. The duties are the duties of the master, and he cannot evade the responsibilities which are incident and cling to them by their delegation to another. When the master appoints some other person to perform these duties, then the appointee represents the master, and though in their performance he may be and is a servant to the master, yet in those respects he is not a co-servant, a co-laborer, a co-employee, in the common acceptation of those terms.

He is an agent and stands instead of the principal, and is not a fellow-servant within the meaning of the rule as applied to laborers and workmen. His acts are the acts of a master and superior, and the servants are bound to use whatever materials, machinery, apparatus or appliances he may see fit to provide for them. This question was carefully considered in the case of Harper vs. Indianapolis & St. Louis R. R. Co., (47 Mo., 567,) and decided in accordance with the doctrines above announced. In any view which I am able to take of the subject, I think that the instruction was right, and that the Judgment should be affirmed.

The other Judges concur, except Judge Sherwood who is absent.