MILLER v. THE MISSOURI PACIFIC RAILWAY COMPANY, *Appellant.*

DIVISION ONE.

1. **Master and Servant:** VICE-PRINCIPAL. Where the master gives to one in his service power to superintend, control and direct the men engaged in the performance of work, such person is, as to the men under him, a vice-principal, and it is immaterial by what name he may be designated.

2. ———: ———: NEGLIGENCE. The master is liable for the negligent acts and omissions of the vice-principal in performing his duties.

3. **Railroad:** CONDUCTOR: VICE-PRINCIPAL. A conductor of a material train, having control of it and its movements, and the foreman over a crew of men engaged in repairing a railroad track, having power to direct them, are vice-principals, and the company is liable for the death of a member of the crew occasioned by their negligence.

4. ———: DEATH OF EMPLOYE: DAMAGES. The representative of the deceased employe is entitled in such case to recover the fixed sum of $5,000 under the second section of the damage act. (R. S. 1889, sec. 4425.)

*Appeal from Johnson Circuit Court.*—HON. C. W. SLOAN, Judge.

REVERSED AND REMANDED.

*H. S. Priest* and *H. G. Herbel* for appellant.

(1) The demurrer to the evidence should have b en sustained. The engineer, fireman and conductor of the work train were fellow-servants with Miller, and, if it be true that he was injured through the negligence of any one of these, it was the negligence of a fellow-servant, for which the defendant is not liable. *Higgins v. Railroad*, 104 Mo. 413; *Schaub v. Railroad*, 16 S. W. Rep. 924; *Corbet v. Railroad*, 26 Mo. App. 621; *Murray v. Railroad*, 98 Mo. 573; *Sherrin v. Railroad*, 103 Mo. 378; *Harrison v. Railroad*, 41 Am. & Eng. R. R. Cases, 403; 79 Mich. 409; *Ely v. Railroad*, 48 N. W. Rep. 222; *Elliott v. Railroad*, 38 Am. & Eng. R. R. Cases, 62. Even if the doctrine now prevailed, that persons in a master's employ engaged in different departments of labor are not fellow-servants, yet that doctrine would not be applicable to the facts of this case. Here the train crew and the section men were all engaged in doing the same thing, viz., repairing the track. The train crew hauled the gravel where it was needed, the section men unloaded it and put it in the track. It was a work train, and all of its crew and the section men were engaged in the same labor, were working in the same department, and in close connection with each other, and, in the fullest sense, were fellow-servants. *Randall v. Railroad*, 119 U. S. 478; *Ely v. Railroad*, 48 N. W. Rep. 222; *Higgins v. Railroad, supra.* Hence, *Sullivan v. Railroad*, 97 Mo. 113, even if still authority in this state, is not in point. For the same reason, it was error to refuse defendant's tenth instruction, and give the plaintiff's first instruction. (2) It was error to give plaintiff's second instruction. By this instruction the jury were directed to assess the plaintiff's damages at $5,000, if they found in her favor. This was wrong, even if the

engineer and plaintiff's husband had not been fellow-servants. As they were fellow-servants, it is clearly wrong. *Proctor v. Railroad*, 64 Mo. 112, 126, overruling *Schultz v. Railroad*, 36 Mo. 18: *Rohback v. Railroad*, 43 Mo. 187; *Elliott v. Railroad*, 67 Mo. 272; *Holmes v. Railroad*, 69 Mo. 53; *Flynn v. Railroad*, 78 Mo. 195; *Schlereth v. Railroad*, 96 Mo. 509; *Schaub v. Railroad*, 16 S. W. Rep. 924; *Parsons v. Railroad*, 94 Mo. 286. The case of *Sullivan v. Railroad* is not in point here, as that case only holds that where an employe is injured by another employe, who is not a fellow-servant of the injured party, such employe can recover under section 4425, Revised Statutes, 1889, and that the measure of damages is $5,000. But the *Sullivan case*, we respectfully submit, is not the law, even under the facts of that case. It is opposed to the repeated holdings of this court in the cases last above cited, and is also in direct conflict with the last decision of this court upon the point. *Schaub v. Railroad*, 16 S. W. Rep. 924.

*S. P. Sparks* for respondent.

(1) Stubblefield, the conductor in charge of the construction train, was as to deceased a vice-principal. *Brothers v. Cartter*, 52 Mo. 373; *Moore v. Railroad*, 85 Mo. 588; *Hoke v. Railroad*, 88 Mo. 360; *Tabler v. Railroad*, 93 Mo. 79; *Whalen v. Church*, 62 Mo. 326. Fitzgerald, the foreman of the defendant's section gang was likewise a vice-principal. Authorities, *supra*. (2) The act of Stubblefield in causing the engineer to start the train without notice to deceased was gross negligence, and the proximate cause of Miller's death. Shearman & Redfield on Negligence [Ed. 1869] secs. 10,

33. (3) If the negligent act of Stubblefield had a share in producing the injury, the company was liable, even though a fellow-servant, the engineer, contributed thereto by a failure to discharge his duties properly. *Railroad v. Cumings*, 106 U. S. 700; *Booth v. Railroad*, 73 N. Y. 38; *Paulmier v. Railroad*, 5 Vroom (N. J.) 151; *Steller v. Railroad*, 46 Wis. 497; *Elmer v. Locke*, 135 Mass. 575; *Faron v. Sellers*, 39 La. Ann. 1011; *Moore v. Wabash*, 85 Mo. 586; *Hoke v. Railroad*, 88 Mo. 360. (4) At common law the master assumes the duty towards the servant of exercising reasonable care and diligence to provide the servant with a reasonably safe place at which to work, and when the service required of the employe is of a particularly dangerous character the master owes him a duty of active viligance, and he has a right to become engrossed in his labor to the extent of being oblivious to the approach of trains, relying as they may upon the duty imposed by law with reference to them. *Railroad v. Fox*, 31 Kan. 586; s. c., 3 Pac. Rep. 586; *Gessley v. Railroad*, 32 Mo. App. 413; *Railroad v. Goebel*, 119 Ill. 515; s. c., 10 N. E. Rep. 369; *Erickson v. Railroad*, 41 Minn. 500; s. c., 43 N. W. Rep. 332; *Moore v. Railroad*, 85 Mo. 588; *Goodfellow v. Railroad*, 106 Mass. 461; *Whalen v. Church*, 62 Mo. 326; *Anderson v. Bennett*, 19 Pac. Rep. 763. (5) The deceased was killed by the negligence of defendant "whilst running, conducting and managing its locomotive and cars." The measure of damages was fixed by the statute, and the court committed no error in fixing the measure of damages at $5,000. *Sullivan v. Railroad*, 97 Mo. 113; *LeMay v. Railroad*, 105 Mo. 371.

BLACK, J.—The plaintiff, the widow of Joshua Miller, brought this suit to recover damages for the

death of her husband who was killed while at work for the defendant on its road at a point between Warrensburg and Montserrat.

The deceased was one of a gang of thirty men, all under the direction and control of Fitzgerald who was their foreman. Fitzgerald and his gang of men were at work raising and ballasting the main track. A gravel train composed of some thirty loaded cars arrived at the place where the men were at work in the afternoon, and it became their duty to unload the same. This was accomplished by the use of a plow. A wire cable, the length of fifteen or sixteen cars, was attached to the plow placed on the rear car. The train was then cut in two, and the other end of the cable made fast to the rear car of the section next the engine. The engine then moved forward drawing the plow over the stationary cars. This done, the engine alone was used to draw the plow over the first section.

The plow removed the bulk of the gravel only and threw some of it between the cars, so that it became the duty of the deceased and the men of his gang to shovel the remaining gravel off the cars, and to remove that which fell between them. On the occasion in question the plow had been drawn over the rear section composed of some fifteen cars, and the deceased and others were on these cars shoveling off the remaining gravel. The first or unloaded section was then backed up and coupled to the second or rear section. It then became the duty of the conductor to take his entire train of cars to the Montserrat siding so as to clear the main track for other trains having the right of way. The conductor gave his engineer a signal to move forward. It seems the deceased was in the act of jumping or stepping from one car to the other just as they began to move, so that the jar threw him down between the wheels.

The evidence for the plaintiff tends to show that the deceased was absorbed in the performance of his work, and that the train was moved without ringing the bell or giving the deceased and those at work on the cars any warning whatever. On the other hand the conductor of the train says he told Fitzgerald what his orders were, namely, to take the train to Montserrat; that he notified him to move his men from the cars; that the men were notified to get off before the engine was coupled on; that he asked two or three of the men if the track was clear, and they said it was; that after the men had been notified to get off he gave the engineer the signal to move ahead. The defendant produced other evidence to the effect that the bell was rung a few seconds before the train started.

The plaintiff's first instruction is as follows: "If you find that at the time the train was set in motion by defendant the deceased's attention was occupied by his work, and that no notice or warning was given him of the moving of the train prior thereto, or at the time of such moving, or that if any such notice or warning was given him it was not of such a character as to put a man of ordinary prudence and care, possessed of ordinary acute senses of hearing and seeing, in the circumstances in which deceased was placed, on his guard, and that deceased did not know that the train was about to be moved, and that the setting of said train in motion by defendant was the direct cause of the injury to deceased, and that his death was the result of such injuries then your verdict should be for the plaintiff."

1. The defendant seeks to be relieved from liability in this case on the ground that Miller lost his life by the negligence of a fellow-servant, thus invoking the rule that the defendant is not liable to one servant for the negligence of a fellow-servant. The case made by the evidence stands on other and different grounds

as we view it. Where the master gives to a person power to superintend, control and direct the men engaged in the performance of work, such person is as to the men under him a vice-principal, and it can make no difference whether he is called a superintendent, conductor, boss or foreman. For his negligent acts and omissions in performing the duties of the master, the master is liable. This principle of law has been often asserted by this court and applied under a variety of circumstances, as will be seen from the following cases: *Brothers v. Cartter*, 52 Mo. 372; *Gormley v. Iron Works*, 61 Mo. 492; *Whalen v. Church*, 62 Mo. 326; *Cook v. Railroad*, 63 Mo. 397; *Moore v. Railroad*, 85 Mo. 588; *Stephens v. Railroad*, 86 Mo. 221; *Hoke v. Railroad*, 88 Mo. 360; *Smith v. Railroad*, 92 Mo. 360; *Tabler v. Railroad*, 93 Mo. 79; *Dayharsh v. Railroad*, 103 Mo. 570.

There is no doubt but a foreman or other representative of the master may occupy a dual position; that is to say, he may at the same time be a fellow-servant and an agent or representative of the master. There are certain duties which are personal to the master, and for the non-performance of which he is liable to his servants. These duties may be delegated to a foreman or even to a servant, and the master is still liable for their non-performance. Again, cases often arise where the master becomes liable by reason of the fact that he undertakes by himself or through a representative to do certain things which might have been left to the servant to perform. Thus, where the master provides suitable materials for a staging and intrusts the duty of erecting the structure to the workmen as a part of the work which they undertake to perform, he is not liable for injuries resulting to one of them from the falling of the staging; but, if the master undertakes to furnish the stage, he must use

due care in its erection, and, if there is negligence on his part or on the part of one representing him in that regard, he is liable for injuries resulting to the servant using the structure. *Bowen v. Railroad,* 95 Mo. 277, and cases cited.

It is unnecessary to pursue this inquiry for any of the purposes of the case in hand, for it is one of the absolute duties of the master to use ordinary care to avoid exposing the servant to extraordinary risks; and it is also the duty of the master to use ordinary care and diligence to provide the servant a safe place at which to work. The master, by appointing a foreman or other person to superintend work, with power to direct the men under him, when and how to do it, thereby devolves upon such person the performance of those duties personal to the master. These principles of law are illustrated in some of the cases before cited, and also in the following authorities. *Railroad v. Fox,* 31 Kan. 586; *Anderson v. Bennett,* 19 Pac. Rep. 764; 1 Shearman & Redfield on Negligence [4 Ed.] sec. 205. If, therefore, the conductor had the control of the train and of its movements, then he was a vice-principal. So, if the foreman had the control of the section gang, and the power to direct the men what to do, and when to do it, he was also a vice-principal. The conductor being a vice-principal, it became his duty to give due and timely warning of his intention to move the train. If he only gave notice of such intended movement to the foreman, then it became the duty of the latter to give the men at work on the cars notice of the intended movement. If the negligence of either of these persons caused the disaster, then defendant is liable, unless it be found that deceased was guilty of contributory negligence.

Now, there is an abundance of evidence upon which to submit this case to the jury on these princi-

ples of law; but the difficulty with the case as it stands is, that the instruction given at the request of the plaintiff utterly fails to make any application of them. It does not require the jury to find facts which would make the conductor or foreman a vice-principal; nor does it require the jury to find that the injury was caused by the negligent act or omission of either of these persons. Nor is there anything in the instruction given at the request of the defendant which cures these defects. The plaintiff's instruction seems to have been framed on the theory that the deceased was not an employe or servant of the defendant. The instruction is so clearly erroneous that further comment is unnecessary. We may say that we have not attempted to formulate instructions, but have attempted to state principles which should be embodied in them.

2.   The second instruction given at the request of the plaintiff fixes the damage at the sum of $5,000, no more, no less; and of this error is assigned. If the plaintiff's case comes under the second section of the damage act, then the instruction is right; but, if under the third section, then it is wrong, for the damages should then be in a sum not exceeding $5,000.

The second clause of the second section relates to passengers only, and, hence, need not be considered at this time. The first clause, so far as it has any application to this case, provides: "Whenever any person shall die from any injury resulting from, or occasioned by, the negligence * * * of any officer, agent, servant or employe whilst running, conducting or managing any locomotive, car or train of cars * * * the corporation, individual or individuals in whose employ any such officer, agent, servant, * * * shall be at the time such injury is committed * * * shall forfeit and pay for every person * * * so dying the sum of $5,000," etc.

In the case of *Sullivan v. Railroad*, 97 Mo. 103, we held that, where an employe of a railroad company is killed in the manner and by the means mentioned in the above-recited portion of the statute, the measure of the damage is $5,000, if there can be any recovery at all. But that case holds that the defenses of contributory negligence, and that the death was due to the negligence of a fellow-servant, are open to the defendant the same as in cases coming under the third section. As that ruling is questioned in this case, it may be well enough to review the prior adjudication upon this subject.

The first case which came before this court was that of *Schultz v. Railroad*, 36 Mo. 14. There one servant was killed by the negligence of a fellow-servant in running a train, and it was held that the defendant was liable under this statute. The effect of that ruling was to make the statute abolish the defense that the servant was killed by the negligence of a fellow-servant, whilst running a locomotive or a train of cars. So far as *Rohback v. Railroad*, 43 Mo. 187, has anything to do with the question in hand, it is an approval of the *Schultz* case.

The *Schultz case* was again approved in *Connor v. Railroad*, 59 Mo. 285, by a majority of the court. NAPTON, J., was of the opinion that the statute was not designed to create any new liability, but simply to extend a pre-existing responsibility to certain representatives of the injured party, in case of death. In that case, one servant lost his life by the negligence of a fellow-servant. It was conceded by Judge NAPTON that the company would be liable if it had been guilty of negligence, in employing an unskilful engineer, or in allowing him to turn over the engine to a fireman who was not qualified to manage it, and the damage resulted from such conduct of the engineer or fireman. It is

not there claimed by him that the case would, in either of such events, come under the third section of the damage act. His whole line of argument shows that the case would then have been based upon the second section, and the damages would be fixed at $5,000.

In *Proctor v. Railroad*, 64 Mo. 117, one servant was killed by the negligence of a fellow-servant in running a train, and the widow brought suit to recover the penalty of $5,000. The court, after referring to the statute, states the question to be decided in these words: "Whether, under the words 'any person,' in said section, a fellow-servant, whose death is occasioned by the negligence of a fellow-servant, without fault of the master, is or was intended to be included." The question to be decided was, it will be seen, carefully stated. It was not simply whether the words "any person" included a servant, whose death was occasioned by the negligence of a fellow-servant, but, whether the death was so occasioned *without fault of the master*. The court first refers to the rule of law which exempts the master from liability where one servant is injured by the negligence of a fellow-servant, and the conclusion is then reached that it was not the design of the statute to abolish that rule, even as to cases mentioned in the first clause of the section, thus, in terms, approving the views previously expressed by Judge NAPTON. The construction given to the statute by the *Proctor case* is still the rule of this court. There is not a thing in that case, or in the prior cases, which gives any countenance to the proposition that, in case of the death of an employe, the action must always be under the third section.

The *Proctor case* refutes any such a claim; for it proceeds upon the principle that the second and third sections were not intended to create an entirely new liability, but were designed to continue or transmit the

right to sue, which the injured party would have had
had he lived. The first inquiry, therefore, in all of these
cases is, whether the representatives of the deceased
person have any cause of action at all. If the injury
was the result of negligence on the part of the deceased,
or was occasioned by a fellow-servant, then there is no
cause of action. But if occasioned by the fault of a
representative of the master, then the master is at fault
and liable. It being once ascertained that the widow,
or other representatives, have a cause of action, the
damages will be $5,000, if the injury, resulting in
death, was occasioned by negligence, "whilst running,
conducting or managing any locomotive, car or train
of cars;" and the fact that deceased was an employe is
wholly immaterial. Neither the statute nor the *Proctor
case* can be tortured into any other conclusion. They
are both plain enough on this question.

*Elliott v. Railroad*, 67 Mo. 272, was a case where
an employe was killed in consequence of the use of
defective machinery. The case did not come under the
first clause of the second section, nor did it come under
the second, for the second clause relates to passengers
only; hence, it was properly held that the case came
under the third section. That case is, therefore, in
perfect accord with what we have said. An observa-
tion there made, to the effect that, under the *Proctor
case*, no action can be maintained by an employe, is inac-
curate and misleading, for we have seen the *Proctor case*
does not go to that extent. A defective track was also
the ground of action in *Flynn v. Railroad*, 78 Mo. 195;
and a defective car constituted the basis of action in
*Parsons v. Railroad*, 94 Mo. 286; and in *Holmes v.
Railroad*, 69 Mo. 536, the employe was killed by the
use of a defective car. These cases are, therefore, also
in line with what we have said. It may be that the
inaccurate expression used in the *Elliott case* has lead

to a different result in one or two cases, but we adhere to the *Proctor case.*

Where, therefore, the representatives of a deceased employe are entitled to recover, the damages are fixed at $5,000, if the injury, resulting in death, was occasioned by negligence in running, conducting or managing any locomotive, car or train of cars.

For the errors in the plaintiff's first instruction the judgment must be, and is, reversed, and the cause is remanded. All concur.