Davis, J.
In the theory of this case which seems to have been entertained by the trial court, there are several radical errors. Nearly all of them result from a misconception of the relation of the deceased to the plaintiff in error. That he was an employe of the railway company is not disputed; but at the time of the accident his position and his conduct were not within the scope of his duty. He was on the main track with the speeder for his own convenience and under circumstances which made his presence there uncalled for and dangerous in the extreme. Such acquiescence in the occasional use of the speeder by the deceased and his father, as may be implied in this case, at best, amounts to no more than a permission for that purpose, and constituted the deceased a bare licensee. The company did not object to the use of the speeder, if it knew of it, nor did it offer any inducement or invitation therefor. 2 Thompson Negligence (2 ed.)j Secs. 1722, 1723. The deceased took the license with its concomitant perils. The acquiescence in th'e use of the track with a speeder did not involvq an undertaking on the part of the company to modify its rights as to the user of its own property; nor could it change its obligations to the public as a common carrier of passengers and freight. The trial court in this case, not without some warrant of authority it must be admitted, took the view, and so instructed the jury, that it was the duty of the railway company to exercise reasonable care, not only to avoid injury to the deceased after it discovered him upon the track, but that it was its duty to keep a careful lookout to discover and avoid injury to any person who might happen to be on its *540 track at that place and at that time, and that this duty was implied in the license to the deceased and his father. It was in this view, apparently, that the court refused to give to the jury the defendant’s first request to charge, and instructed the jury instead that the defendant “had a right to run its cars at the time and place of the accident at any speed and in any manner 'consistent with safety which was necessary in the conduct of its business in the usual and ordinary manner, taking into consideration, however, all circumstances surrounding the locality, and having a due regard to the safety of persons who might be upon its tracks. It was required to use ordinary care in running its train, having due regard to the rights of others.” Such a conception of the law is opposed to reason because a bare licensee must know that his license is subject to all the risks incident to the use of the track by the company, in the same manner in which it was used at the time the license was granted, and that the company assumes no new obligation or duty toward him. Therefore, the company owed him no duty of active vigilance to especially look out for and protect him. Railway Co. v. Aller, 64 Ohio St., 192; 3 Elliott on Railroads, Sec. 1250. It is believed that it is also contrary to the weight of authority. 3 Elliott on Railroads, Secs. 1250, 1251; 2 Thompson Negligence (2 ed.), Secs. 1709, 1711, 1712, 1723, 1724; Railway Co. v. Vittitoe’s Admr. (Ky.), 41 S. W. Rep., 269. It may be added here, that the rule is substantially the same as to trespassers and mere licensees, that is, licensees without invitation or inducement. An employe who goes upon the track or elsewhere upon the company’s premises not in the line or discharge of his duty, and without any invitation, express or implied, is at most *541 a mere licensee to whom the company owes no duty to keep such place safe. 3 Elliott on Railroads, Sec. 1251, and cases cited; 1303 and cases cited; Railway Co. v. Marsh, 63 Ohio St., 236; Baker, Admr., v. Railway Co., 95 Iowa, 163; Railroad Co. v. McKnight, 16 Ill. App., 596; 1 Thompson on Negligence (2 ed.), Secs. 945, 946.
The doctrine of Harriman v. Railway Co., 45 Ohio St., 11, does not apply here, because there is in this case no pretense of acquiescence in the public use of the railway track in the way in which it was used by the deceased, nor was there any invitation or inducement held out to the deceased to so use it. There Avas at most only a failure to object to such user. We cannot think, therefore, that the trial court was right in instructing the jury as it did in this regard, and in refusing to instruct as requested in the defendant’s first request.
In this connection we will consider the instructions of the court to the jury in regard to signals. Seemingly having in mind the erroneous’ theory criticised above, the trial court called the attention of the jury to the fact that evidence had been introduced by the plaintiff tending to show that the defendant had neglected and failed to give the statutory signals required oñ approaching and passing a public cross-' ing, and the jury Avere instructed that it was for them to determine, from the evidence, whether such signals were given or not, and that their conclusion on that subject would be one of the elements which they should consider in determining whether the defendant was guilty of negligence that produced, in whole or in part, the death of the deceased; and further, that the deceased was bound to use reasonable precautions to detect the approach of trains, and was *542 bound to know that the defendant might run a train over the road at that point at any time, “unless lulled into a feeling of security by the failure of the defendant’s employes, in charge of its train, to observe the statutory regulations and rules of the company in the matter of running and management of the train, at the time and place of the accident and under the circumstances shown by the evidence.” It was also charged that the deceased, while in the employment of the company, and when at or near a public street crossing, had a right to expect the performance of that duty. The accident did not happen at or near the crossing, but more than six hundred feet west of it, and not while the deceased was crossing the track, but while he was traveling longitudinally upon it. Independently of the theory of liability to a bare licensee, Avhich we have already discussed, this raises the question whether the statutory duty to give signals when approaching a crossing, inures to the benefit of persons on the track and not at a crossing. The statute obviously is not for the protection of 'persons, who are not crossing the track or about to do so; for not only is the whistle to be sounded before reaching the crossing, but the bell is to be continuously rung until the crossing is passed. The signals are not required at any other time. This* is the construction which has been adopted in several jurisdictions Avhere the question has arisen. It Avas fully considered and distinctly decided in Railroad Co. v. Depew, 40 Ohio St., 121, 127-129. Also in the following cases: O’Donnell v. Railroad Co., 6 R. I., 211; Harty, Admr., v. Railroad Co., 42 N. Y., 468; Williams v. Railroad Co., 135 Ill., 491; Railroad Co. v. McKnight, 16 Ill. App., 596; Rohback v. Railroad Co., 43 Mo., 187; Toomey v. Railroad Co., 86 Cal., *543 374; Hale v. Railroad Co., 34 S. C., 292; Railway Co. v. Gravitt, 93 Ga., 369; 2 Thompson on Negligence, (2 ed.), Sec. 1707. There being no legal duty, in that regard, due from the defendant to the deceased, this' instruction to the jury was erroneous.
Up to this point, we have endeavored to consider the questions of law which were under review without complicating them with the subject of contributory negligence. It becomes necessary now to look at that phase of the case. The cpurt refused to instruct the jury as requested in the defendant’s fourth request. This instruction was sound and ought to have been given. If it were found to be true that the deceased chose to travel with the speeder upon the main track for no reason connected with his employment, other than his convenience; that he rode down the main track with a companion, on the speeder, in violation of the order of his superior, the station agent; that from the station to the south switch light there was a “passing track” on which he could have placed the speeder and easily and with absolute safety have reached his destination, and that instead of doing so he chose to go down the main track, without keeping' any lookout behind him, there can be no doubt that he was guilty of negligence which proximately contributed to his own injury, unless the defendant could have avoided the injury after discovering the deceased upon the track. The authorities sustaining this proposition are so numerous that it would be prae: tically impossible to cite them all here. We content ourselves with citing a few pertinent cases and leading text writers, with the cases collected and cited by them: 3 Elliott on Eailroads, Sec. 1303, and cases cited in notes thereto; 2 Thompson on Negligence, (2 ed.), Secs. 1734, 1738, 1747, 1748 and 1774, and *544 eases cited in notes thereto; Ream v. Railroad Co., 49 Ind., 93; Railroad Co. v. Depew, 40 Ohio St., 121; Burling, Admx., v. Railroad Co., 85 Ill., 18. It will he seen from these authorities that the instruction, as requested, states the law more strongly against the company than was necessary. It makes the qualification that “unless the jury shall further find that the defendant’s agents and employes * * * could have avoided said accident after they became aware of the presence of the said Arleigh J. Mead, upon said' track.” Strictly speaking, the law would require the defendant, after discovering the deceased to be upon the track, to use reasonable care under the circumstances to avoid the accident, not absolutely to avoid it; but this being an error against the party asking the instruction, it should not have been refused for that reason. Besides, the instruction which was asked, specifically challenged the attention of the jury to some very important circumstances affecting the claim of contributory negligence, and the error of refusing this is nowhere cured in the charge as given.
Again, the defendant asked the court to charge the jury that the plaintiff could not recover on account of, or by reason of, any negligence on the part of James H. Mead, the father of the deceased, at that time the agent of the defendant; and also that plaintiff could not recover for any pecuniary loss suffered by the father of deceased, on account of the death of his son, if the jury should find that the father was guilty of negligence directly contributing to the death of his- son. These requests were refused. There was, it is true, no issue in the pleadings upon this subject; but the court did charge the jury that “in arriving at the total amount of damages in the case, the jury *545 should consider the pecuniary injury to each separate beneficiary, but the verdict should be for a gross sum not exceeding ten thousand dollars,” and that “what has each separate beneficiary lost in money in the death of Arleigh J. Mead, will be your inquiry.. First determine the value of his life to the father, next the value of his life to his mother,” etc. Having done this and having given the jury the plaintiff’s requests, numbered 13 and 19, the defendant’s request that the jury should also be instructed that the plaintiff would not be entitled to recover for any pecuniary loss of the father, if the jury should find that the father was, guilty of negligence directly contributing to the death of the son, could not properly be refused. Wolf, Admr., v. Railway Co., 55 Ohio St., 517.
The trial court and the counsel for the defendant in error seem to have entertained the view that the question raised concerning the ordinance of Buckeye City, related to the validity and effect of the ordinance; but the issue in the pleadings was as to the legal passage and existence of the ordinance. The evidence to show the existence of the ordinance was clearly incompetent and insufficient, and the charge of the court did not cure the error of admitting it. It left the ordinance with the jury, as if it were a proven fact, instructing them that it was a circumstance to be taken into consideration, “in connection Avith all other facts and circumstances, in determining whether the defendant was negligent in the running of the train in the manner in which you find the evidence shows it was run at the time and place of the accident; and also in determining whether the deceased was guilty of negligence that contributed to cause his death.” Nothing more needs to be said on that subject.
*546 Another manifest error was the sending of the hook of rules to the jury to be used by them in their deliberations, only a few of the rules having been offered in evidence. Upon this record we would not reverse for that error, because it does not clearly appear that the company was prejudiced thereby; but we mention it in order that we may not seem to have approved it, and for the guidance of the trial court hereafter.
The judgments of the circuit court and the court of common pleas are

Reversed.

Burket, Spear, Shaudk and Price, JJ., concur.