MATZ et al. v. CHICAGO & A. R. CO.

(Circuit Court, W. D. Missouri, W. D.    January 24, 1898.)

No. 2,226.

1. DEATH BY WRONGFUL ACT—INSTANTANEOUS DEATH.
   The right of action under section 2 of the Missouri Damage Act (Rev. St. Mo. § 4425) to recover for death by wrongful act is an original, and not a transmitted, right, and exists even where the death was instantaneous.

2. FEDERAL COURTS—DICTA OF STATE COURT.
   Mere dicta of a state court concerning the construction of a statute of the state, are not binding upon the federal courts.

3. SAME—CONSTRUCTION OF STATUTE—UNDERSTANDING OF BENCH AND BAR.
   Uniform and contemporaneous action and opinion of the bench and bar of a state should have weight with the federal courts in construing a statute of the state.

4. PLEADING—GENERAL DEMURRER.
   The objection to an allegation of a complaint, in an action to recover damages for death by wrongful act, to the effect that defendant "knew, or by the exercise of ordinary care might have known," of the danger, on the ground that it does not comply with section 2071, Rev. St. Mo., relating to alternative allegations, cannot be raised by a general demurrer.

Scarritt, Griffith & Jones, for plaintiffs.
Wash. Adams, for defendant.

ROGERS, District Judge. The complaint in this case is as follows:

"Plaintiffs, for cause of action, state that they are husband and wife, and are and were the father and mother, respectively, of the child, William Matz, herein referred to. That the said William Matz was born in the year 1888, and while he was a minor and unmarried, died, March 19, 1897, from an injury occasioned as hereinafter stated. That the defendant is, and was at all the times herein referred to, a railroad corporation, duly created and existing under and by virtue of the law, and at all such times owned and operated a railroad running through Kansas City, in the state of Missouri, in an east and west direction, and across a certain street or avenue therein known as 'Agnes Avenue.' That said Agnes avenue, at the times, herein referred to, extended through the said Kansas City in a north and south direction, and is and was the only street or avenue running north or south connecting what is commonly known as the 'East Bottoms' with the residence portion of said city between

the West road, near the Blue river and Lydia avenue, said last two named streets being about two miles apart. That the intersection of the said Agnes avenue with defendant's railroad is, and was at all such times, within the city limits of Kansas City, and is and was a thickly settled locality, in the vicinity of which are located many large factories, elevators, breweries, and other industries that give employment to a large number of people, and in the vicinity of which are many residences. That said Agnes avenue is, and was at such times, paved with a macadam thoroughfare, over and along which many people and vehicles travel daily. That at the time herein referred to no watchman was stationed, or gates or bars maintained, at the crossing of defendant's tracks and the said Agnes avenue, to warn children and the public in general of the approach of cars and engines thereto; that at all such times there was in force and effect in said Kansas City a certain ordinance numbered 41,982, entitled 'An ordinance in revision of the ordinance governing the city of Kansas,' approved May 12, 1888, section 820 of which said ordinance being as follows: 'No conductor, engineer, fireman, brakeman or other person shall move, or cause or allow to be moved, any locomotive, tender or car, within the city limits, at a greater speed than six miles per hour, under a penalty of not less than twenty-five dollars nor more than five hundred dollars.' That at the times herein referred to it became and was the duty of the defendant, in the management and operation of its said railroad, not to allow any conductor, engineer, fireman, brakeman, or other person to move or cause to be moved any locomotive or car within the city limits, and at the place aforesaid, at a greater rate of speed than six miles per hour. That on or about the 19th day of March, 1897, the defendant, wholly disregarding its duty as aforesaid, negligently and carelessly permitted and allowed its conductor, engineer, fireman, brakeman, and agents to move or cause to be moved, a certain locomotive and train of cars of defendant in the city limits, and at the place aforesaid, westwardly, at a greater rate of speed than six miles an hour, and carelessly permitted its said engine and cars in charge of its servants and agents aforesaid to run at a reckless and dangerous rate of speed, at the time and place aforesaid, to wit, at the rate of thirty-five miles an hour, upon and over the said William Matz, and thereby mortally wounded and injured him, from which injuries he died immediately thereafter. That said defendant company, at the time and place aforesaid, acting by and through its servants in charge of the said engine and cars, carelessly and negligently caused or permitted its said engine and train, while in charge of its servants and agents aforesaid, to run upon the said William Matz, without giving him any notice or warning of the approach thereof, and without slowing up or slackening the speed thereof, and without exercising reasonable care to avoid injuring him, the said William Matz, after they, the servants and agents of defendant, in charge of its said engine and train, knew, or might by the exercise of ordinary care have known, of his position of danger and peril in time, by the exercise of ordinary care, to have avoided any injury to him; and by reason of its said negligence defendant permitted and allowed the said engine and cars to run upon and kill the said William Matz, while he was lawfully at the said crossing when and where he had a right to be. That the said William Matz died from injuries received and occasioned by the negligence and unskillfulness of the officers, agents, servants, and employés of defendant company whilst running or managing its said locomotive and cars as aforesaid, to the plaintiffs' damage in the sum of five thousand dollars ($5,000)."

To the complaint a general demurrer was interposed.

Two questions were argued and submitted: (1) The complaint having alleged that the deceased died immediately after the injury was received, it is contended that the deceased had no cause of action in his lifetime, and could, therefore, transmit none to the plaintiffs, under section 4425, Rev. St. Mo., under which section the action was brought. (2) That, the complaint having alleged that the defendant company "run upon the said William Matz without giving him any notice of the approach thereof, and without slowing up or slackening the speed thereof, and without exercising reason-

able care to avoid injuring him, the said William Matz, after they, the servants and agents of defendant in charge of its said engine and train, knew, or might by the exercise of ordinary care have known, of his position of danger and peril in time, by the exercise of ordinary care, to have avoided any injury to him," that the alternative allegation, "knew, or by the exercise of ordinary care might have known," etc., does not comply with section 2071 of the Revised Statutes of Missouri, which is as follows: "Either party may allege any fact or title in the alternative, declaring his belief of one alternative or the other, and his ignorance whether it be the one or the other." The court sustained the demurrer on the first ground, and, without much consideration as to the second ground, suggested to plaintiffs to so amend their complaint, if they elected to amend, as to conform to the last-named statute. On motion of plaintiffs, the court subsequently heard a reargument of the demurrer, vacated the order sustaining it, and took the same under advisement. The questions stated are the ones to be decided.

As to the first question, it will be noted that the suit is brought by the father and mother, and not by the father alone. At common law, and under the laws of Missouri also, the father has a property in the services of his son during his minority, for which he may sue and recover if he is deprived of such services by the misconduct of another. James v. Christy, 18 Mo. 162; Stanley v. Bircher, 78 Mo. 245; 2 Sedg. Dam. (8th Ed.) § 575. In such cases. however, loss of service must be alleged. 2 Sedg. Dam., supra. No allegation of that kind or kindred nature is found in the complaint. If William Matz had survived the injury alleged, but lost an arm or leg, or sustained any permanent injury, he might have sued by his next friend, and recovered therefor. He might also have recovered for pain and suffering. But he is not shown to have lived after the injury was received. On the contrary, it is alleged he immediately died. No authority need be cited to show that at common law such an action could not be maintained by the father or mother or both, or by any one else. "Actio personalis moritur cum persona," was the common-law maxim, and it applied to infants as well as adults. But the rule of the common law has been changed in England, by what is commonly called the "Lord Campbell's Act," enacted in 1846, and which has served as a model for similar acts in most of the states of the United States. Tiff. Death Wrongf. Act, 4. In Missouri, the damage act, similar to the Lord Campbell act, is found in sections 4425–4427 of the Revised Statutes. It has been in force more than 40 years. It is inartistically, if not bunglingly, drawn. It has been construed by the supreme court of Missouri many times. The judges of that court have disagreed as to its meaning, and the court has overruled itself as to the proper construction of it, and even now I am not able to reconcile the language and the logic of the different opinions of that court which have not been expressly overruled. The wonder is that such a statute could remain in force so long. Confessedly, this action is brought under section 4425, supra, which, for convenience, I will hereafter call the second section of damage act. In what

respect did that statute change the common law? Did it create a new cause of action, and give it to the parties designated in the statute? Or did it simply transmit a cause of action which the deceased had in his lifetime to the persons designated in the statute? If the former, this action is clearly maintainable; if the latter, it would seem it is not. On the argument, it was conceded by the defendant's counsel that, as an original proposition, he thought the statute created a new cause of action. In that view I concur, and I think it is the only construction which does not involve absurdities. It was also conceded that, if the supreme court of Missouri has decided the statute does not create, but simply transmits, a cause of action, the circuit court of the United States should follow it. In this I concur. But it was insisted by counsel for plaintiffs that, if the supreme court of Missouri has not passed upon the precise point presented, expressions of that court used in construing that statute when other points, and not the one at bar, were under consideration, do not bind the circuit court of the United States, and are, indeed, no precedent for the court delivering the opinion. On this point, in Cohens v. Virginia, 6 Wheat. 399, Mr. Chief Justice Marshall said:

"The counsel for the defendant in error urge, in opposition to this rule of construction, some dicta of the court in the case of Marbury v. Madison, 1 Cranch, 174. It is a maxim, not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit, when the very point is presented for decision. The reason of this maxim is obvious. The question actually before the court is investigated with care, and considered in its full extent. Other principles which may serve to illustrate it are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated."

In Carroll v. Carroll's Lessee, 16 How. 286, Mr. Justice Curtis said:

"If the construction put by the court of a state upon one of its statutes was not a matter in judgment, if it might have been decided either way without affecting any right brought into question, then, according to the principles of the common law, an opinion on such a question is not a decision. To make it so, there must have been an application of the judicial mind to the precise question necessary to be determined to fix the rights of the parties, and decide to whom the property in contestation belongs."

I think the contention of the plaintiffs on this point must be conceded.

Sections 4425, 4426, and 4427 of the Revised Statutes of Missouri, which are sections 2, 3, and 4 of the damage act of Missouri, are as follows:

"Sec. 4425. Damages for Injuries Resulting in Death in Certain Cases. When and by Whom Recoverable.—Whenever any person shall die from any injury resulting from or occasioned by the negligence, unskillfulness or criminal intent of any officer, agent, servant or employé whilst running, conducting or managing any locomotive, car or train of cars, or of any master, pilot, engineer, agent or employé whilst running, conducting or managing any steamboat, or any of the machinery thereof, or of any driver of any stage coach or other public conveyance whilst in charge of the same as a driver; and when any passenger shall die from any injury resulting from or occasioned by any defect or insufficiency in any railroad or any part thereof, or in any locomotive or car, or in

any steamboat, or the machinery thereof, or in any stage coach or other public conveyance, the corporation, individual or individuals, in whose employ any such officer, agent, servant, employé, master, pilot, engineer or driver shall be at the time such injury·is committed, or who owns any such railroad locomotive, car, stage coach, or other public conveyance at the time any injury is received, resulting from or occasioned by any defect or insufficiency, unskillfulness, negligence or criminal intent above declared, shall forfeit and pay for every person or passenger so dying the sum of five thousand dollars, which may be sued for and recovered; First: by the husband or wife of the deceased, or second, if there be no husband or wife, or he or she fails to sue within six months after such death, then by the minor child or children of the deceased, whether such minor child or children of the deceased be the natural born or adopted child·or children of the deceased: provided that if adopted such minor child or children shall have been duly adopted according to the laws of adoption of the state where the person executing the deed of adoption resided at the time of such adoption; or third, if such deceased· be a minor and unmarried, whether such deceased unmarried minor be a natural born or adopted child, if such deceased unmarried minor shall have been duly adopted according to the laws of adoption of the state where the person executing the deed of adoption resided at the time of such adoption, then by the father and mother who may join in the suit, and each shall have an equal interest in the judgment; or if either of them be dead, then by the survivor. In suits instituted under this section, it shall be competent for the defendant, for his defense, to show that the defect or insufficiency named in this section was not of a negligent defect or insufficiency, and that the injury received was not the result of unskillfulness, negligence or criminal intent.

"Sec. 4426. When Representative May Sue.—Whenever the death of a person shall be caused by a wrongful act, neglect or default of another, and the act, neglect or default is such as would if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who, or the corporation which would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured.

"Sec. 4427. Damages, by Whom Recovered—Measure of. All damages accruing under the last preceding section shall be sued for and recovered by the same parties and in the same manner as provided in section 4425, and in every such action the jury may give such damages, not exceeding five thousand dollars, as they may deem fair and just, with reference to the necessary injury resulting from such death, to the surviving parties who may be entitled to sue, and also having regard to the mitigating or aggravating circumstances attending such wrongful act, neglect or default."

Bearing in mind the principles announced, supra, let us examine the Missouri decisions. The first which has been called to my attention is Schultz v. Railroad Co., 36 Mo. 13. In that case the widow of an employé of the defendant company brought suit for the death of her husband, and recovered on the theory that section 4425 rendered the defendant company liable for the negligence of a fellow servant of the plaintiff. The supreme court of Missouri affirmed the judgment in that case. · It does not appear that deceased was instantly killed. The precise question at bar was not, therefore, involved. The opinion turned upon the question as to what the proper meaning of the words "any persons," used in the second section of the statute, meant, and the court held that it included employés; indeed, included all persons. The effect of the decision was, therefore, to make the defendant company liable for the "negligence, unskillfulness, or criminal intent of any officer, agent, servant, or employé whilst running, conducting, or managing any locomotive, car or train of cars," etc. All the judges concurred. The opinion was delivered by Justice Holmes. In Connor v.·Railroad

Co., 59 Mo. 292, the point decided in the Schultz Case was assailed. The suit was by the wife for the death of her husband. The opinion of the court was delivered by Justice Napton, who, in a vigorous, learned, and able argument, expressed his dissent from the doctrine announced in the Schultz Case. In a separate opinion, exhaustive, and I think, convincing, Justice Hough concurred with Judge Napton that the Schultz Case was unsound. Justices Wagner, Vories, and Sherwood, in a dissenting opinion, concurred in reversing the case on another point, but adhered to the doctrine announced in the Schultz Case. It does not appear that deceased, Connor, was instantly killed, and therefore the precise point at bar was not raised. In the opinion of Justice Napton, while reviewing the precise point decided in the Schultz Case, he says:

"The common-law axiom, that 'actio personalis moritur cum persona,' was the mischief which the legislature wished to abolish, and at the same time to point out the survivors who should have the right of action. The distinctions between the right of action in passengers and employés, and the cases in which the one or the other might maintain actions, were not in the mind of the legislature in framing this enactment. They were looking in a different direction, and the use of the term 'person' in the first clause of the section, and the term 'passenger' in the second, and of either 'passenger or person' towards the conclusion, was merely a blunder of the draftsman, who, disregarding all the rules of punctuation, and delighting, apparently, in obscure, complicated, and tautological phraseology, seems suddenly, after half completing the section, to have dropped in the word 'passenger' at the very place where it ought to have been omitted, and left it out at the very place where it should have been inserted in order to have carried out the real design of the act. The word 'person,' if carried through the section, would have answered, or the words 'person or passenger' in all the clauses could have created no confusion or doubt. There was no intention of establishing any new rules of liability for damages to the party injured, where he was alive, and entitled to his action, but simply to extend the benefit of that liability to certain members of the family of the injured person when death resulted from the injury. Had any such design been entertained, it was a simple and easy task to be accomplished in plain, clear, and unmistakable language. * * * But the third section clearly announces the object of the legislature, which was to give no new cause of action, to legislate into existence no new grounds of recovery, but to give to certain representatives of a dead man a right of action which did not before exist in such representatives, where the man, if living, would have had one, and in no other case."

Mr. Justice Hough, in his separate opinion in the Connor Case, 59 Mo. 308, while reviewing the point decided in the Schultz Case, uses this language:

"It is evident to my mind, from the whole scope of the damage act, that the purpose of the legislature in the second section was simply to cause those actions to survive to certain representatives of the deceased in the cases there named, which according to the rules of the common law died with the person, and to limit the amount of recovery in such cases. No new right of action is given as to passengers or strangers in the second section,—that is to say, the right of action which the passenger himself, or a stranger, would have had, if injured, but not killed, is made, in the event of death, to survive; and if the words 'any person' shall be held to mean passengers and strangers, and such employés only as are not fellow servants of those causing their death, then no new liability will be created as to any one by the second section, and the several parts of this statute will constitute a consistent and harmonious whole."

The next case is that of Proctor v. Railroad Co., 64 Mo. 119. The suit was by the wife for the death of her husband, an engineer on the defendant company's road, and the complaint alleged he was

"instantly killed." The suit was brought under the second section of the damage act. In that case recovery was had. On the trial the defendant objected to the introduction of any evidence (1) because there is no cause of action stated in the petition; (2) because the plaintiff seeks to recover in this cause on account of the death of her husband, Joseph Proctor, who was an employé of defendant at the time of his death, which was occasioned by the negligence or carelessness of co-employés of defendant. The court overruled the objections. On appeal, Norton, J., delivering the opinion, said:

"The point presented for our determination involves the construction of Wag. St. p. 519, § 2 (Rev. St. § 4425), especially as to whether under the words 'any person,' in said section, a fellow servant, when death is occasioned by the negligence of a fellow servant, without fault of the master, is, or was intended to be, included. The determination of this point will be decisive of this case."

In an able opinion the precise point in the Schultz Case is expressly overruled. Henry, J., dissented, adhering to the Schultz Case, and discusses other points, and interprets the three sections of the damage act. It will be seen that the precise point at bar was not discussed by the court or in the dissenting opinion, although it seems to me the first objection to the admission of any evidence fairly raised it. The case was reversed, the court holding that the words 'any person' in the statute do not embrace a servant injured by the negligence of a fellow servant.

In the Proctor Case, supra, the court say:

"Under the view of plaintiff, the right to sue is not a transmitted right, but an original right, arising or appearing for the first time at the death of the death of him or her through whom the right is derived. The very force of the second section is at war with any other idea than that the right to sue was intended to be a transmitted right, and not an original right. * * * It manifestly appears from these provisions—for they apply to the injuries alluded to in section 3 as well as to those in section 2—that it must have been in the mind and intention of the legislature only to confer upon the above classes of persons the right to sue in cases where the husband, wife, or child could have sued, had not death been the result of the injury."

In White v. Maxcy, 64 Mo. 553, the deceased, White, lived a day after injured, so that the precise question at bar was not raised or decided, but Napton, J., delivering the opinion, said:

"Neither of these sections [sections 4425, 4426, Rev. St. Mo.] created any new cause of action, but provided for a survival of a cause of action which existed at the common law, where the death of the party injured occurred, to certain representatives of the deceased party, and limited the amount of the recovery to a specific sum."

In Elliott v. Railroad Co., 67 Mo. 273, the court follow the Proctor Case, Henry, J., dissenting, and adhering to the Schultz Case. The court said:

"The suit can only be maintained when the deceased, had he lived, could have recovered damages for his injury; and the same evidence as to the cause of the injury is required in a suit by his representative that would have been required had he survived, and sued for the injury."

In this case the suit was brought under the second section, but the court held it should have been brought under the third section, of the damage act. The precise point at bar was not decided.

In Sullivan v. Railway Co., 97 Mo. 120, 10 S. W. 852, the Proctor

Case, supra, is again approved, but the precise point at bar was not discussed or decided. Opinion was by Black, J., and no dissent, the personnel of the court having, in part, changed.

In Gray v. McDonald, 104 Mo. 311, 16 S. W. 398, Black, J., delivering the opinion, said:

"This section [the third section of the damage act], like the preceding one, does not, as is often supposed, create a new cause of action when the injured person would have had one had death not ensued. In other words, the cause of action does not abate by reason of the death of the person injured. * * * If the injured party would have had a common-law or statutory cause of action had death not ensued, then the cause of action survives to the designated person."

The precise point at bar was not raised or decided in this case, it appearing affirmatively that Gray, the deceased, was not instantly killed.

In Miller v. Railroad Co., 109 Mo. 361, 19 S. W. 58, Black, J., delivering the opinion, the Proctor Case, supra, is followed and approved, but the precise question at bar was not decided. It does not appear that Miller was instantly killed.

Apparently in conflict with the foregoing opinions is that delivered by Judge Black in Crumpley v. Railroad Co., 98 Mo. 35, 11 S. W. 244. The suit was by the widow for the death of her husband, and it does not appear that the deceased was instantly killed. The precise point at bar was not before the court, but the court said:

"Sections 2121, 2122, and 2123 [Rev. St. 1879] of the damage act give to representatives of the deceased person a cause of action where none existed in their favor at common law. In other words, if the injured party would have had a cause of action had death not ensued, then these sections give to the designated representatives a cause of action, and, if the case comes within section 2121, the defendant shall forfeit and pay the sum of five thousand dollars."

What Judge Black meant, I think, is clear from what he had previously said in the Sullivan Case, supra, and subsequently in Gray v. McDonald and in the Miller Case, supra, where no intimation is given of any change in his mind as to the construction of the damage act.

I think the logic of the Missouri decisions, supra, is to the effect that the damage act of Missouri is a survival statute; that it transmits, but does not create, a cause of action. The language used by the court is different in different cases. Various terms and phraseology have been used by the different judges, and confusion may have grown out of inaccurate terms used. The Century Dictionary defines a cause of action to be "the situation or state of facts which entitles a party to sustain an action." Certainly, the statute does not create any new "situation or state of facts." It does give to the persons designated in the statute a right to sue on a "situation or state of facts" upon which such persons could not have sued before the enactment of the statute. In Douglas v. Beasley, 40 Ala. 148, "cause of action" is defined as "a right to bring an action, which implies that there is some person in existence who can assert, and also a person who can lawfully be sued." Until the enactment of the statute, nobody had the right to bring an action for a personal injury resulting in instant death. The statute gave that right—if it exists—to the person designated therein. In Veeder v. Baker, 83

N. Y. 160, "cause of action" is defined as follows: "It may be said to be composed of the right of the plaintiff and the obligation, duty, or wrong of the defendant; and these combined, it is sufficiently accurate to say, constitute the cause of action." In the case at bar the plaintiffs would have had no "right" had the statute not been enacted. In Jackson v. Spittall, L. R. 5 C. P. 552, "cause of action" is defined as "the act on the part of the defendant which gives the plaintiff his cause of complaint." Until the enactment of the statute, no act of a defendant, in a case like the one at bar, gave a cause of complaint to any one. The cause of complaint died with a party, when instantly killed. In Meyer v. Van Collem, 28 Barb. 231, "cause of action" is defined as "the right which a party has to institute and carry through such a proceeding." But, as stated, no one had the right to institute an action for a personal injury resulting in death until the enactment of the statute, whether instantly killed or not. It seems to me the plain import of the third section of the statute is to give a cause of action as defined, supra, to the parties designated in the statute, where none existed before in anybody, and to limit the recovery to $5,000; that defendant could avail itself of any defense which it could have invoked before the statute was enacted, except the death of the injured party. It abolished that defense. That, to recover, the parties designated in the statute must establish just such a case as the deceased would have had to establish if he had sued and recovered before his death for the same injury, and, in addition, to show that the injured person was dead, and that they are the persons designated in the statute, who are authorized to sue. The damages being liquidated, no evidence on that line is required.

In White v. Maxcy, supra, Judge Napton said:

"Neither of these sections [sections 4425, 4426, Rev. St. Mo.] created any new cause of action, but provided for survival of a cause of action which existed at common law, where the death of the party injured occurred, to certain representatives of the deceased party, and limited the amount of the recovery to a specific sum."

Apply that interpretation of the statute to a case of "instantaneous death." At common law, in a case of personal injury producing instantaneous death, there was no cause of action in anybody. If there was no cause of action at common law in such a case, none could survive or be transmitted. A cause of action which never had an existence could neither survive, abate, nor be transmitted. It seems to me, therefore, that the statute gives a cause of action, or it does not exist at all. I think the logic of the opinions of the supreme court of Missouri above referred to leads inevitably to the conclusion that, where the death of the party injured is instantaneous, or contemporaneous with the injury causing the death, no action can be maintained; but I have reviewed these decisions to show that that court has not thus far expressly so decided; nor, do I believe, when the question at bar is squarely presented, it will so decide. I am confirmed in this view by the fact that in the Proctor Case the petition alleged the deceased was "instantly killed." In Carroll v. Railway Co., 88 Mo. 242, it was alleged that "death was instantaneous," and the court sustained a judgment for $5,000. In

these cases the question at bar was not raised, nor was it noticed. Is it probable that all the learned judges and counsel engaged in deciding and prosecuting these suits, and the various suits under this act, overlooked this precise question? It seems hardly credible. The uniform and contemporaneous action and opinion of the bench and bar should have weight in determining the construction of a statute. Venable v. Railway Co., 112 Mo. 125, 20 S. W. 493. Moreover, other courts have held to this view, upon similar statutes. Brown v. Railroad Co., 22 N. Y. 191; Whitford v. Railroad Co., 23 N. Y. 465; Reed v. Railroad Co. (S. C.) 16 S. E. 291; Mason v. Railway Co. (Utah) 24 Pac. 797; Railroad Co. v. Kindred, 57 Tex. 491; Hulbert v. City of Topeka, 34 Fed. 510. Indeed, the learned counsel for the defendant admit that, unless the supreme court of Missouri have decided to the contrary, as an original proposition, the statute gave a new cause of action. Whether you call the right to sue, which the statute confers on parties designated therein, a transmitted right or an original right, whether you call the suit a transmitted cause of action or a new cause of action, I think it is clear that the legislature intended the persons designated in the statute should have a cause of action whether the party died simultaneously with the injury, or survived, lingered, and died afterwards. I can see no reason, either in law or in common sense, why they should have a cause of action if he was injured, lingered, and died, but have no cause of action at all if he was instantly killed. The very fact that the recovery, if had, is a liquidated sum, and does not go to the estate, but to the persons designated, tends to show it is compensation for death alone, and not for pain, suffering, expenses incurred, and death. On this point the demurrer should be overruled.

As to the second point, I am not sure that the question can be raised by demurrer. I rather incline to the view that it should be raised by motion to make more specific or definite and certain. At all events, I do not think it can be raised by a general demurrer. Rev. St. Mo. § 2044, and cases cited in note f. The demurrer should be overruled on that point. The defendant will be allowed a reasonable time to plead.